PHIL DAVIS v. THE STATE.

*No. 1438.   Decided December 9th, 1896.*

**1.  Seduction—Impeachment of Prosecutrix.**

On a trial for seduction, where the prosecutrix has testified, that no person had had carnal intercourse with her, except defendant, it is admissible to prove by other men, in order to contradict her, that they had had carnal intercourse with her.

**2.  Same—Evidence—Carnal Intercourse with Other Men.**

On a trial for seduction, evidence that the prosecutrix, subsequent to the alleged seduction, had promiscuous intercourse with other men, might shed light upon her character as a chaste woman at the time she claimed she was seduced, and is admissible for that purpose.

**3.  Same—Impeachment of Prosecutrix.**

Where the evidence showed that the prosecutrix was enceinte, and she attributed her condition to acts of carnal intercourse with defendant during the months of October and December, it is competent, in order to lay a predicate for her impeachment, for the defendant on cross-examination to ask her, if she had not had carnal intercourse with one S. in Dallas during Christmas week? And, if she did not state to one D. that she was in a family way, and had gotten so at Dallas during Christmas?

**4. Same—Charge as to Excluded Testimony.**

Where the court had excluded all testimony regarding illicit intercourse between the prosecutrix and other men since October, 1895, it was improper to charge the jury in regard to such excluded testimony.

**5. Same—Evidence—Letters of Prosecutrix.**

Where the prosecutrix, as a witness, had testified that she was pregnant by defendant, and had never had intercourse with any other man, letters written by her to another man charging him with being the father of her child, and in one stating, "nothing got the matter with me until you fooled with me Christmas," were admissible in evidence for the purpose of discrediting the prosecutrix, and also for the purpose of shedding light upon her chastity at the time of her alleged seduction by defendant.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

Appeal from a conviction for seduction; penalty, four years' imprisonment in the penitentiary.

The indictment charged the defendant with the seduction of Annie Rainwater, an unmarried female under the age of 25 years, in Dallas County, on the 1st day of February, 1896.

The prosecutrix testified that she was 18 years of age. That she was engaged to marry defendant in June, 1895. That she had intercourse with him first in October following, he stating at the time, that, "we are engaged and it would be no harm and nobody would know it." That he was with her almost continuously after that time until April. That the date fixed for their marriage was March the 8th. That defendant postponed it to April 29th, and on April 28th he married another woman. She denied that she had ever had carnal intercourse with any man but defendant. On cross-examination the court refused to permit her to be asked if it was not a fact that she had had carnal intercourse with Walter Scott in Dallas during Christmas week, and also in May, 1896; and had she not told one Lucy Davis (fixing time and place) that she was in a family way and had gotten so in Dallas on Christmas.

The father and mother of the prosecutrix both testified that defendant told them he was engaged to her and that the date fixed for the marriage was the 29th of April.

For the defendant, Scott Baldwin, Gus Payton and Porter Davis testified that they had had sexual intercourse several times with the prosecutrix before October, 1895; and Mon Simpson testified that he had seen Scott Baldwin and the prosecutrix in the act of sexual intercourse last fall a year ago, in her father's cow lot.

Walter Scott testified that he was engaged to prosecutrix "part of last year," and he was shown letters which he identified as letters written to him by the prosecutrix. These letters were also proved to be in her handwriting by other witnesses. These letters were introduced and read in evidence. In her letter of May 16th she says: "i am going to tell you what is the truth about the baby, i beleave it is yourn, if you want to know why, this is the reasin but i never told anyone i beleave it but have always have thought so and always will. Never fool with

Johnnie but three times and nothing git the matter with me until you fool with me Christmas."

[No briefs for either party have come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of seduction, and given four years in the penitentiary, and prosecutes this appeal. Appellant excepted to the action of the court in refusing to permit him to prove by Walter Scott, Scott Baldwin, and Gus Payton, that each had had carnal knowledge of the prosecutrix. The objection to this testimony was that it was proposed to prove by these witnesses that the act of carnal intercourse had taken place since October, 1895, when the proof showed that the seduction is alleged to have taken place. Appellant claimed that the testimony was admissible for two purposes: (1) To contradict the prosecutrix, who stated that she never at any time had had carnal intercourse with any person except the defendant; and (2) that it was admissible as going to the gist of the offense charged in this case, to-wit: the seduction of the prosecutrix. We believe the testimony was admissible for both these purposes. The prosecutrix had testified that no person had had carnal intercourse with her except the defendant; and this testimony was admissible to contradict her evidence. Furthermore, the vital question in this case was whether or not defendant had seduced the prosecutrix; that is, whether, by a promise of marriage, he had led her from the paths of virtue and chastity, and induced her to submit to his embraces. It is true that if the prosecutrix had previously led a chaste life, and in October the defendant had practiced upon her credulity by his arts and wiles, and by a promise of marriage had succeeded in seducing her, it would not be a defense to this action to show that subsequently she became a lewd woman, or a prostitute. But the fact that subsequent to October, when it is alleged the seduction in this case occurred, she had carnal intercourse with other men promiscuously, might serve to shed some light upon her character as being a chaste woman at the very time the act of seduction is alleged to have occurred; and we do not believe the jury should have been deprived of this fact. When the prosecutrix was on the stand on cross-examination, the defendant asked her "if it was not a fact that she had carnal intercourse with Walter Scott, in Dallas, during Christmas week, and also in May, 1896; and also if she did not, at the house of Lucy Davis, near Carrolton, Dallas County, Texas, in February, 1896, tell said Lucy Davis that she was in a family way, and had gotten so at Dallas during Christmas." The court did not permit these questions to be asked the prosecutrix. The defendant insisted upon said testimony, in order to lay the predicate to impeach her. He stated that he proposed to impeach her by the testimony of Walter Scott and Lucy Davis. In view of the fact that the evidence showed that the prosecutrix was enceinte (said to have occurred by connection with the defendant during October and Decem-

ber), and that the State's evidence attributed her condition to the defendant, we believe that it was permissible for the defendant to have laid the predicate for the impeachment of this witness, and to have impeached her upon these matters, as they appear to have been material in this case.  In the charge to the jury the court instructed them, "if they believed, beyond a reasonable doubt, that the prosecutrix had had carnal knowledge with other men since October, 1895, that they could then only look to such acts of carnal intercourse since October for the purpose of assisting them to determine the weight to be attached to her evidence as a witness."  This charge was excepted to by the defendant, because the same was a charge on the weight of the evidence, because it put the burden of proof upon the defendant, and because such acts of illicit intercourse ought to be looked to for the ·purpose of determining who seduced her, and when she was seduced.  Said bill, aside from the record, shows that all testimony regarding the illicit intercourse between the prosecutrix and other men besides defendant, since October, 1895, was excluded; and it was improper for the court to charge the jury in regard to said excluded testimony.  And, if same had been admitted (which was not the case), the charge of the court put an improper limitation upon the effect of said evidence.  Certain letters, shown to have been written by the prosecutrix to one Walter Scott, were introduced in evidence by the defendant.  Said letters, as exhibited, were five in number, and bore the following dates, to-wit: January 5, 1895, November 27, 1895, January 14, 1896, February 13, 1896, and May 16, 1896. These letters are such as a colored girl might, with propriety, write to her lover, with the exception of the one of date May 16, 1896.  This letter contains a direct charge by the prosecutrix against Walter Scott, that he was the father of her baby.  In that letter, she alludes to one Johnny, but who the party is, is not made known.  She says, however, that, "I never fooled with him but three times, and that nothing got the matter with me until you (meaning Walter Scott) fooled with me Christmas."  The court instructed the jury in regard to these letters, as follows: "You cannot look to any evidence of the handwriting of the defendant's sister, Lizzie Simpson, as incriminative of the defendant.  Such handwriting, if used for any purpose, can only be used for the purpose of assisting you in determining who wrote the letters in evidence.  And the same is true of the handwriting of Annie Rainwater." To the latter part of this instruction, as to the handwriting of the prosecutrix, the defendant excepted, on the ground that he had a right to have the jury consider her handwriting, for the purpose of determining (if they found she wrote the letters in evidence) the fact whether she was chaste at the time she alleges she was seduced, and as to the fact that she relied on the promise of marriage she swore the defendant made, and generally to determine if she was seduced at all.  And the court further instructed the jury: "The letters can only be considered by you as to the credibility of the witness, Lizzie Simpson, or Annie Rainwater," etc., "and that, if they believed Annie Rainwater wrote them,

they could only look to the letters for the purposes of weighing her evidence on the stand," etc. Appellant excepted to this paragraph of the charge, insisting that the jury had a right to look to said letters to determine therefrom, as far as they could, the guilt or innocence of the defendant. The letters, and especially the one of May 16th, 1896, could be looked to by the jury for the purpose of discrediting the testimony of the prosecutrix, inasmuch as she attributed her pregnant state to the defendant alone, and also that she testified that no one else had had intercourse with her except the defendant. But we believe it and the other letters could also be looked to by the jury for the purpose of shedding light upon the chastity of the prosecutrix at the time she is alleged to have been seduced by the appellant. If she insisted, as she did, that she never had carnal intercourse with any person except the defendant, that she was enceinte by him, that she was, at the time she claimed to have been seduced and impregnated, a pure and chaste woman, and that she surrendered her virtue only to the defendant, it would certainly be competent for the defendant to prove by any testimony—certainly by her own admissions—that she was intimate with other men, and that, in fact, according to her own declarations, she was pregnant, not by the defendant, as she claimed to be, but by another person. The charge of the court improperly limited the purpose and effect of this testimony. For the errors pointed out, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*