# CHARLESTON.

## STATE *v.* KITTLE *et als.*

Submitted November 4, 1919. Decided November 11, 1919.

1. RAPE—*Evidence of Character of Prosecutrix.*

   In a prosecution for rape where the defendant admits hav-
   ing illicit connection with the prosecutrix, but swears she con-
   sented, evidence of her previous character for chastity is
   material upon the principal issue. (p. 119).

2. SAME—*Witnesses—Evidence of Previous Character of Prose-
   cutrix.*

   Where in a trial for rape the defendant admits having sex-
   ual intercourse with the prosecutrix but swears she consented
   to the act, and there is evidence tending to prove that, prior
   to the commission of the alleged crime, she was a prostitute
   receiving the embraces of other men promiscuously, and she

is asked on cross-examination whether she did not, on prior occasions designated and within a month or two before the alleged offense, have illicit connection with certain other men and she denies it, evidence of the facts denied are admissible as tending to prove consent. (p. 122).

Error to Circuit Court, Barbour County.

Lawrence Kittle and others were indicted for rape, and they bring error.

*Reversed and remanded.*

*A. M. Cunningham, James Coberly, W. T. George, H. J. Wilcox,* and *A. G. Jenkins,* for plaintiffs in error.

*E. T. England,* Attorney General, *Charles Ritchie,* Assistant Attorney General, and *W. Bruce Talbott,* Prosecuting Attorney, for the state.

WILLIAMS, JUDGE:

Lawrence Kittle, Elbert Rhoades, Ray Hill, Arch George, Frank Logan, Floyd Moore, Thirl Griffith, and Jesse Thorpe were indicted for committing rape upon one Fannie Borror, a girl fifteen years of age, on the night of July 16, 1918. They were indicted at a special term of the circuit court of Barbour county called on the 23rd of July and were jointly tried in one week thereafter, and all found guilty except Jesse Thorpe, who was acquitted. Floyd Moore and Thirl Griffith were found guilty as principals in the second degree, with a recommendation by the jury that all be punished by confinement in the penitentiary, whereupon Kittle, Rhoades and Moore were sentenced for a period of eighteen years; Ray Hill, Arch George and Frank Logan for fifteen years each, and Thirl Griffith for ten years. This writ of error was awarded upon the joint petition of all the defendants. The indictment also charges the aforesaid defendants with conspiring to commit a rape upon the aforesaid Fannie Borror, and with having committed the aforesaid rape in pursuance of such conspiracy.

It appears that, on the night of the 16th of July, 1918, the prosecutrix attended a picture show in the town of Belington and when the show was over, about nine-thirty o'clock, she came out of the building and was met by Jesse Thorpe and together they walked along the street in the direction of her home; that

when they came to a corner, known as Ballah's Corner, some of the defendants took her away from Thorpe, and she says defendant Moore took hold of her arm and forced her to go up the hill to where defendant Kittle's automobile was awaiting and that Kittle then put her in the car with Rhoades, Hill, Logan and George and then drove to a place near the village of Dartmoor, some distance from Belington, and there kept her the remainder of the night, and that during the time she was assaulted, forcibly and against her will by a number of the boys, naming them, and by some of them more than once. She was brought back near to the town of Belington the next morning about seven thirty o'clock, she says, and put out in the road, and went to the home of Mrs. Borror, her foster mother who raised her since she was a year old. Mrs. Mary Beckner, a daughter of Mrs. Borror, who cooks for Davis Brothers in their restaurant in the town of Belington and has a room in the same building and usually stayed there at night, swears she was told by her sister Gertrude, about half past seven o'clock the next morning, that Fannie had not been at home that night. She then went immediately, she says, to her mother's home, thinking somebody had killed her, and did not find her there. She went down town again and was gone ten or fifteen minutes and then returned to her mother's and found Fannie there crying and very nervous. She says Fannie's dress was torn and her underclothes very bloody, and that she gave her a change of clothing and her mother washed her soiled underclothes. Dr. Rohrbough examined her at his office that afternoon and says he discovered that her vagina was inflamed and swollen, and also found what he thought was a small particle of the hymen adhering to the walls of the vagina. He says she was very nervous. Dr. Scott Smith, another physician who examined her about a week after the alleged rape was committed, swears that at that time the local manifestations of injury were not well marked; that if there had been any injury, such as testified to by Dr. Rohrbough, they had at that time pretty well cleared up. But at that time, he swears she was very nervous, that she could hardly talk so as to be understood on account of crying. He further states that the presence of a part of the hymen adhering to the walls of the vagina would be evidence of the fact that the hymen

had been recently ruptured, that when ruptured it soon disappears entirely.

All of the defendants, except Thorpe, Moore, Griffith and Rhoades, admit they had sexual intercourse with the prosecutrix on the night in question, but they deny they used any force. They all swear that she consented, and Kittle and Logan swear they had had sexual intercourse with her on previous occasions with her consent. As evidence tending to prove consent defendants offered to prove by other witnesses that she had had sexual intercourse with a number of other boys, on other occasions not long before July 16, 1918. Before offering this evidence the prosecutrix was asked on cross-examination if she had not had illicit intercourse with other boys, naming them, on previous occasions to which her attention was particularly called, and she said she had not, and denied that she had ever been out at night with any boys, and denied that she had ever had sexual intercourse with anyone prior to the time of the alleged rape. This proffered testimony was rejected and its rejection is assigned as error. Whether such evidence is admissable is a question on which there is much conflict in the authorities. We are not cited to any early Virginia decisions, or any decisions of this court directly on the question, and we have failed to find any. In a comparatively recent Virginia decision, we find the question whether or not the chastity of the prosecutrix in a trial for rape can be supported by evidence, unless it has been previously attacked, mooted but not decided. *Coleman* v. *Commonwealth,* 84 Va. 1. And in *Fry* v. *Commonwealth,* 82 Va. 334, it was held not permissible on cross-examination of the prosecutrix to ask her if she had not before been a person of unchaste character. But the opinion on this point is brief and cities no authority and gives no reason for denying the question. Whether the question was considered by the court as privileged, or as introducing collateral matter for the purpose of contradicting the witness, the opinion does not state. It seems to us that the previous character of the prosecutrix for chastity or unchastity is material upon the vital issue whether or not the prosecutrix consented. Here she swears she was forced against her will, and resisted all she could. But defendants swear she consented to the act with each one of them who had

sexual intercourse with her. The evidence is not admissible because the law does not recognize that rape may be committed upon an unchaste as well as upon a chaste female, but for the reason that it is very much more probable that a prostitute would consent to the act than that a previously chaste woman would consent. Mr. Greenleaf says the rules of evidence are founded in the philosophy of nature, in the truths of history and the experiences of common life. When a charge of rape is made, one of the first questions that arises in the mind of a person who does not know the complainant, the accused, or any of the attendant circumstances, is, what is the character of the complainant. Says Judge Freeman, who delivered the opinion of the court in *Titus* v. *The State,* 7 Baxter, (Tenn.), at page 133: "It would be absurd, and shock our sense of truth, for any man to affirm that there was not a much greater probability in favor of the proposition that a common prostitute had yielded her assent to sexual intercourse than in the case of the virgin of uncontaminated purity. All will readily assent to the proposition that she who followed prostitution as a trade would not be so likely to depart from her degraded habit, and resist an offer for indulgence of illicit vice, as would the woman of perfect purity, whose every instinct would prompt her to revolt at the thought of such a liberty. Yet the principle which would exclude the testimony offered must necessarily be based on the idea, either that no such difference exists, or that this element, on which every one would necessarily rely in the formation of an opinion on the question of consent as of great weight, shall be disregarded in such an investigation in court, where the highest object should be the ascertainment of truth, by all means fairly tending to its development." See also *Benstine* v. *State,* (Tenn.), 2 Lea 169, 31 Am. Rep. 593.

It was held in *People* v. *Abbot,* 19 Wend., (N. Y.), 192, that in a trial for rape the prosecutrix might be asked whether she had previous connections with other men and that she was not privileged from answering. This is a well considered case and the very able and logical opinion of Judge Cowan shows that evidence of previous unchastity is of primary importance upon the vital issue whether or not the prosecutrix consented and that the question was not permissible simply for the pur-

pose of laying a foundation to impeach the reputation of the prosecutrix for truth and veracity, but to prove that she was a common prostitute, and would therefore be more likely to consent to the act. The Judge says: "It goes to her credibility in the particular matter, to a circumstance relevant to the case in hand from which the jury are asked to say she did consent; and it may be proved by the prosecutrix or, if she denies it, by others."

Many of the courts of this country, following some of the English decisions, hold that the question is a privileged one and that, if the prosecutrix denies it or refuses to answer it, the defendant is precluded from contradicting her, because it is certain to be a collateral matter. We understand very readily how it would be a collateral matter if the question is asked only for the purpose of laying a foundation for impeaching the prosecutrix for truth and veracity. The question is allowable on cross-examination of the prosecutrix because her previous character for chastity or unchastity is a material fact bearing on the material issue, whether or not she consented. It relates to an operation of the mind, and the admissibility of evidence of previous unchastity rests on the same principle on which evidence is received to prove a scienter, as in cases of passing counterfeit money, wherein it is admissible to prove that the accused on prior occasions passed counterfeit money as evidence tending to prove that he knowingly did so in the particular instance on trial; and in many instances wherein it becomes necessary to prove the intent with which a particular act was done, evidence of other similar and distinct acts are admissible as tending to prove the intent of the particular act. *Bank* of *Pennsboro* v. *Barker,* 75 W. Va. 244. In *Woods* v. *People,* 10 N. Y. 515, following *People* v. *Abbott, supra,* it was held that evidence on behalf of the prisoner to prove that the prosecutrix was in the habit of receiving men in her dwelling for the purpose of promiscuous intercourse was proper. See also *People* v. *Betsinger,* 11 N. Y. S. 916. In *Brennan* v. *The People,* 7 Hun. 171, a trial for rape, the prosecutrix denied on cross-examination that she had gone with a man to a liquor shop and afterwards accompanied him to a lumber yard and endeavored to get him to have carnal intercourse with her, and evidence to prove this

fact was excluded by the trial court. But on appeal, the exclusion of the evidence was held to be error. The following decisions also hold such evidence admissible: *State* v. *Murray,* 63 N. C. 31; *State* v. *Freeman,* 100 N. C. 429; *Brown* v. *State,* 72 Miss. 997; *Nolen* v. *State,* (Tex. Crim. App.), 88 S. W. 242; and *Stewart* v. *Commonwealth,* (Ky.), 133 S. W. 202. Professor Wigmore, in his very able and comprehensive treatise on evidence, Vol. 1, Sec. 200, says that no question of evidence has been more controverted than this one, and quotes extensively and approvingly from the opinion of Judge Cowan in *People* v. *Abbot, supra,* which he designates as the classical opinion in favor of admitting such evidence, and then expresses his own opinion in the following language: "Between the evil of putting an innocent or perhaps an erring woman's security at the mercy of a villian, and the evil of putting an innocent man's liberty at the mercy of an unscrupulous and revengeful mistress, it is hard to strike a balance. But with regard to the intensity of injustice involved in an erroneous verdict, and the practical frequency of either danger, the admission of the evidence seems preferable."

The specific acts of unchastity, which the defendants sought to prove by the rejected evidence, related to escapades alleged to have occurred within only a month or two prior to the 16th of July, 1918, with a number of boys other than the defendants when three or four boys were present at the same time, all witnessing the act, and more than one of them actually engaging therein, with her consent. Such testimony is admissible as evidence tending to prove the previous general bad moral character of the prosecutrix, a fact material in determining the vital issue in the case. The admission of testimony by some of the defendants themselves of previous illicit intercourse with the prosecutrix does not cure the error. Defendants were entitled to prove the fact by disinterested witnesses.

It is contended that there is no evidence to support the verdict against the defendants Moore and Griffith, who were found guilty as principals in the second degree. This point is not well taken, for there is evidence from which the jury could conclude that they were conspirators, present aiding and abetting when the alleged crime was committed.

Complaint is also made of the giving of instructions Nos. 3, 4, 5, and 8 on behalf of the State. We have carefully considered these instructions and do not find any error in them.

We reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*