ELWELL SATTERWHITE v. THE STATE.

No. 11998. Delivered February 6, 1929.
Rehearing granted appellant June 19, 1929.
Rehearing granted State December 18, 1929.

The opinion states the case.

*Lamar Bethea* of Bryan and *John M. Mathis* of Houston, for appellant.

*W. E. Neeley,* County Attorney and *F. L. Henderson,* both of Bryan, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment confinement in the penitentiary for thirty-five years.

Appellant challenges the sufficiency of the evidence. We deem the evidence sufficient to support the conviction. Appellant admitted the act of intercourse, but declared that prosecutrix consented to such act. Prosecutrix, Angelina Vitopil, and Leonard Shelton testified to facts showing that appellant accomplished the act of intercourse

by the use of force, and that prosecutrix put forth her utmost resistance to prevent being outraged. According to their testimony, prosecutrix attempted to run away, begged appellant to desist, fought him until her strength was gone and screamed for help. Shelton testified that he did not interfere because of the fact that he was afraid of appellant. State's witnesses testified to having heard prosecutrix scream and to having seen her attempt to leave appellant's car. Another witness testified that on the day following the commission of the offense appellant stated to him, in substance, that he had been out with a "little old girl" the night before; that she would not let him have intercourse with her; and that he accomplished his purpose by the use of force. We deem it unnecessary to further discuss the revolting details of the transaction.

It is shown by bill of exception Number 1 that appellant desired to ask prosecutrix if she did not go out to numerous dances, both public and private, with different boys; if she did not keep the company of certain girl companions, who were common prostitutes and women of easy virtue and bad repute; if she did not become intoxicated while at dances; if she had not been put off of the dance floor because of her drunkenness and indecent dancing and conduct; if she had not been out on drunken parties with certain named men, who on each occasion hugged and kissed her. It is recited in the bill that appellant would have proved by prosecutrix "that some of these facts were true and that she would have denied some of them being true." It was further recited that appellant would have produced certain named witnesses, who would have testified that the things inquired about occurred. The bill is multifarious. Some of the matters inquired about could not properly be received in evidence. We are not advised what the answers would have been to questions which may have been proper. It is, therefore, manifestly impossible to appraise the bill.

In his argument to the jury, private prosecutor referred to appellant as a "beast in human form." The argument was objected to, the jury were promptly admonished not to consider it and appellant's written requested instruction on the subject was submitted. If error, the prompt action of the court in the premises, in our opinion, saved appellant from injury.

Appellant complains of the action of the court in refusing to submit several special charges, which were to the effect that prosecutrix must have resisted to the utmost or otherwise consent would be presumed. We note that in the main charge the court instructed the

jury that if prosecutrix did not put forth her utmost resistance to prevent carnal knowledge appellant should be acquitted. Furthermore, the jury were charged that if they had a reasonable doubt as to whether prosecutrix consented to the act of intercourse they would acquit appellant. Again they were advised that it was not necessary that consent be put in words, and that if prosecutrix yielded her person to appellant, that would be in law consent. Several of appellant's requested charges on the same subject were submitted to the jury, among them being an instruction that it was necessary for prosecutrix to resist to the utmost extent whatever force or efforts appellant made to have carnal knowledge of her, and that if the jury had a reasonable doubt as to whether prosecutrix acquiesced, consented or agreed by word or act to the act of intercourse, appellant should be acquitted. In another charge, given at the request of appellant, the jury were instructed that if they believe that appellant only desired to fondle and persuade prosecutrix to have carnal relations with him and that he did not intend to have carnal knowledge of her without her consent and that he did not have carnal knowledge of her without her consent they would acquit him. In view of the fact that the general charge and requested instructions submitted to the jury covered the subjects embodied in the rejected instructions, the court did not err in refusing to submit such instructions.

Appellant alleged in his motion for a new trial that two jurors who were prejudiced against him sat on his jury. It was averred that said jurors had, before being summoned for jury service, stated, in substance, that appellant was guilty and ought to be convicted. The court heard evidence on the motion. Each juror denied the statement attributed to him, and disclaimed any prejudice against appellant. The court did not err in overruling the motion. In Branch's Annotated Penal Code, Section 565, the rule is stated as follows:

"When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant, the decision of the trial court on that issue will be sustained by the appellate court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge."

In Meadors v. State, 275 S. W. 829, in discussing a similar question, this court said:

"When there is a controversy raised as to this character and kind on motion for a new trial, and the trial court hears the testimony,

his decision is not reversible under such circumstances, and is only reversible when the testimony is all one way or when the decision is clearly wrong."

See also McKenzie v. State, 11 S. W. (2d) 172.

We have carefully examined every contention made by appellant and fail to find reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—That the appellant had sexual intercourse with the prosecutrix is conceded. Whether it was with or without her consent was an issue of fact. The issue arose directly from the specific testimony of the appellant that the prosecutrix gave her consent and circumstantially from the description of the episode by the prosecutrix and her escort, one Shelton, and from their subsequent conduct. Without going into details, the evidence shows without conflict that the prosecutrix, a girl nineteen years of age, after leaving her place of employment at a cold-drinks stand about ten o'clock at night, went with her escort Shelton to a restaurant. While on the street, the appellant (a married man with whom she had very slight acquaintance) was met and upon his invitation she and Shelton entered the automobile for the purpose of being driven by the appellant to the home of the prosecutrix. Instead of going to her home the car was driven into the country for some distance. During a part of the time the appellant was at the steering wheel and at other times Shelton was driving the car. The appellant fondled the person of the prosecutrix and utimately had intercourse with her while she was on the seat of the car, Shelton having gotten out of the car at the time. After the occurrence the appellant claimed that the prosecutrix and her escort had taken some money from him and threatened to call the police. A search for the money was made by the appellant, the prosecutrix and Shelton. After the occurrence the parties rode in the appellant's automobile to the home of the prosecutrix, where she and Shelton got out, and the appellant drove to his home.

The evidence justifies the conclusion by the jury that no report was made of the assault by either Shelton or the prosecutrix until

after the expiration of three or four days; that in the meantime the prosecutrix had visited a doctor and received a treatment for a bruise on her arm which she had received in the assault; that her clothing was bloody but not exhibited to any one until after it was washed and was later destroyed by her; that immediately after the occurrence she told her companion Shelton that the appellant did not hurt her; that she went to her work on the day after the occurrence; that before the assault the appellant had boasted to some of his friends that he had taken a prostitute for a ride and with contest had had intercourse with her. The doctor who examined her testified in behalf of the State that there was a discharge from her person which was, in his opinion, due to a venereal disease. After the State had closed its case, proof was made demonstrating that neither the appellant nor his wife had been affected with such a disease. Thereafter the physician was recalled and stated that after a microscopical examination he had reached the conclusion that the prosecutrix was not infected with the disease.

We learn from Bill of Exceptions No. 1 that after the prosecutrix had testified as a witness in behalf of the State, the appellant indicated to the court that he desired to ask her numerous questions; that the jury was retired and the appellant detailed to the court the substance of the questions which he desired to ask. Among these questions were, in substance, the following: If it was not a fact that she associated with common prostitutes; that within a year before moving to Bryan she had associated with common prostitutes and had become intoxicated while at a dance and had been removed from the floor because of drunkenness and indecent conduct; that subsequent to her removal to Bryan she had been on drunken parties on various occasions with other young men whose names were given, and that on each of these occasions she allowed her escort to fondle, hug and kiss her, and that upon one occasion she drank to such a degree that it was necessary to carry her home; that it was at a late hour of the night. From the bill it appears that the appellant expected her to give an affirmative answer to some of the inquiries and to deny some of them; that he would offer testimony of the young men whose names were given and embraced in the bill and who were present in attendance upon the court under process; that all of said witnesses would testify that they had been out with the prosecutrix at nights at different times and that on each occasion she became intoxicated and fondled the men and they fondled her. The court stated in the absence of the jury that he would not permit the pros-

ecutrix to be interrogated about these matters nor would he permit the men whose names are mentioned to take the stand and testify in regard to, them. The soundness of the legal proposition embraced in the court's ruling in denying the appellant the privilege of making the cross-examination mentioned and of making proof by the witnesses named touching the acts of the prosecutrix is, we think, on reflection, properly before this court for review. The bill makes it clear that the trial judge did not regard the proposed cross-examination proper and was of the firm opinion that the testimony mentioned which was expected from the witnesses named was not admissible, and that the inquiry of them touching their knowledge of the conduct of the prosecutrix should not be permitted.

Many years ago one of the courts of England decided that in a prosecution for rape evidence that the female, before the time of the alleged offense, had had connections with other persons was incompetent. The ruling was based upon the theory that it could not be supposed that the prosecutrix came prepared to defend her character except against a general attack. Without analysing the soundness of the ruling, the Supreme Court of this state followed it and in part it has since been followed by this court. See Pefferling v. State, 40 Tex. Rep. 486. In adopting the rule mentioned by this court the apparent justice of the reception of such evidence was conceded that the weight of authority was in favor of the rule excluding it. See Lawson v. State, 17 Tex. Crim. App. 292. By "weight of authority" it is doubtless meant the number of decisions. At the time the announcement was made in this state it may well be doubted that tested by the rule of better reason the weight of authority supported the holding. The matter is still one upon which there is a difference of opinion. It is said by Mr. Wigmore that "no question of evidence has been more controverted"; and after an analysis of the conflicting views reflected by the decisions and the reasons upon which they are based, Mr. Wigmore, in the latest edition of his work on Evidence (published in 1923), declares that "the better view seems to be that which admits the evidence." From the opinion of the Supreme Court of Tennessee in the case of Titus v. The State, 7 Baxter (Tenn.) 133, the following quotation is taken:

"It would be absurd, and shock our sense of truth, for any man to affirm that there was not a much greater probability in favor of the proposition that a common prostitute had yielded her assent to sexual intercourse than in the case of the virgin of uncontaminated purity. . . . Yet the principle which would exclude the testimony

offered must necessarily be based on the idea, either that no such difference exists, or that this element, on which every one would necessarily rely in the formation of an opinion on the question of consent as of great weight, shall be disregarded in such an investigation in court, where the highest object should be the ascertainment of truth, by all means fairly tending to its development."

In harmony with the conclusion mentioned are the following cases: Brennan v. People, 7 Hun (N. Y.) 171; People v. Knight, (Cal.) 43 Pac. 6; Strang v. People, 24 Mich. 1; People v. Flaherty, 79 Hun 48, 29 N. Y. S. 641; State v. Kittle, 85 W. Va. 116, 101 S. E. 70; State v. Johnson, 28 Vt. 512. From the rule as originally declared both the English and the American courts have departed in part, and many of the American courts in toto. See Wigmore on Evidence, 2nd Ed., Vol. 1, pp. 435–436, sec. 200. In this state and in most of the states of the Union, the rule has been modified to the extent, where there is an issue of consent the cross-examination of the prosecutrix touching her relations with other men is permitted subject in some cases to her right to claim the privilege of silence. See Underhill's Crim. Ev., 3rd Ed., p. 859, sec. 621, in which it is said:

"Evidence of drunkenness and dissipation, of the keeping of late hours and of street walking on the part of the prosecutrix will always be received."

In the opinions of this court are many instances in which it has been declared that the lascivious conduct upon the part of the prosecutrix was relevant and competent upon the issue of chastity. As stated in the quotation above and the authorities cited, an unchaste character, whether established by direct or circumstantial evidence, may become a cogent factor in solving the issue of consent or nonconsent in a case of rape. In this connection we may mention the cases of Cloniger v. State, 91 Tex. Crim. Rep. 143; Norman v. State, 89 Tex. Crim. Rep. 330.

In Nolan's case, 48 Tex. Crim. Rep. 436, it was held that the trial court erred in sustaining the objection to the question propounded to the prosecutrix on cross-examination "going to show illicit relations, lascivious conduct with other parties than defendant. This evidence should have been admitted." Touching the cross-examination of the prosecutrix in a case of rape, the opinion of the Supreme Court of New York in the case of The Peoples v. Abbot, 19 Wendell, 195, upholding the right of the accused to ask the prosecutrix whether she had had previous criminal connection with

other men, is of interest. Of the case last mentioned the Supreme Court of the State of Missouri, in the case of The State v. Patterson, (88 Mo. 88), speaking through Judge Sherwood, said:

"That case has been criticised, but it has been frequently followed, and the ideas it embodies are fast gaining ground. . . . The reasoning of that case I have never seen answered, nor do I believe it can be."

In the present instance the appellant is shown by the bill to have brought himself within the modified rule touching the admissibility of specific acts in two particulars: First, he sought to exercise the right of asking the prosecutrix leading questions on her cross-examination touching her conduct not going to the extent of illicit intercourse with third parties; and second, he sought to prove by available witnesses specific acts of the prosecutrix going to show her lascivious conduct falling short of illicit relations with others. The questions which he desired to propound to the prosecutrix were so framed as to call her admission or denial of acts relevant to the question involved, namely, her character as bearing upon the probability of the truth of her testimony touching the want of consent. In refusing to accord appellant the privilege of the cross-examination mentioned and in refusing to permit him to introduce the witnesses mentioned in the bill and prove that the prosecutrix on numerous occasions had been out with *men other than the appellant and had on each occasion become intoxicated and had permitted them to fondle her person and that she had engaged in similar conduct towards them,* the trial court was in error. The prosecutrix's course of conduct, as revealed by the testimony, is relied upon by the appellant as discrediting her and her companion to a degree that requires a reversal of the case for the insufficiency of the evidence. We are not in accord with this contention. Some of the matters mentioned are recognized by the law as cogent circumstances for the consideration of the jury in deciding the controverted issue of consent, but we do not regard them conclusive. We are of the opinion, however, that the evidence of non-consent is not of a character so conclusive as to render the error mentioned harmless.

The motion for rehearing should be granted, the affirmance set aside, the judgment of the trial court reversed and the cause remanded for another trial. It is so ordered.

*Granted. Judgment reversed and remanded.*

ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—The State's motion for rehearing makes vigorous attack on our opinion of reversal both for having considered appellant's bill of exceptions No. 1,—which is claimed to be wholly defective,—and also for a departure from the long settled law of this State as deduced from any opinions of this court. It is urged that appellant's bill of exceptions No. 1 is vague, indefinite and multifarious, and that same is an inseparable mixture containing much offered testimony which is inadmissible, with some of doubtful admissibility, and some possibly which might be competent, and that to consider it in this condition would be against practically an unbroken line of authorities in this State. It is also urged that if the bill be considered, its contentions are unsound, and that the announced law of our opinion of reversal is contrary to what may be regarded as the established law of Texas; also that our opinion of reversal is not warranted by the character of testimony rejected by the trial court.

The law applicable in every case must fit the facts of that case. The case before us on its facts shows that a girl of foreign extraction, who worked at night, and who lived with her father, her mother being dead, left her work about ten o'clock with a seventeen year old boy who appears to have been a timid young fellow, if not in fact worthy to be called a weakling; that they went to a restaurant, and while eating were accosted by appellant who insisted on taking them to the girl's home in his coupe,—a project to which the companion of prosecutrix seems to have urged assent. Getting them in his car appellant drove away from the town and into the country, over the protest of prosecutrix, and to a place where she seems to have gotten out, and to have been pursued by him until she got back in the car. At this point efforts seem to have been made by appellant, which were admitted by him to have been unsuccessful, to indulge in familiarity with prosecutrix. He drove them over on the Hearne and Bryan road, during all of which time he seems to have been prosecuting his effort to have prosecutrix submit to him but without success. At some point not far from Hearne he induced the boy to get out of the car, and while out, according to prosecutrix, he had carnal intercourse with her by force and against her will and resistance. Appellant's position is that after having made many and renewed and repeated efforts during the entire ride that at this last point prosecutrix finally consented. It was admitted that appellant was drinking. The

boy who was with the prosecutrix testified that he was afraid of appellant; that all of appellant's efforts while he was in the car were repulsed by prosecutrix, and that toward the last prosecutrix appeared to be worn out, weak and limp, that when she got out of the car, after it is claimed the assault was committed, she was crying and sick. This witness testified that he protested and told appellant repeatedly to leave the girl alone. After having had intercourse with the girl appellant brought against one or both of them the charge that they had gotten some of his money. They helped him search for it. This might be considered a ruse on his part to prevent outcry on theirs. The boy testified that the next morning he talked to prosecutrix over the telephone and she asked him what she should do and he told her not to say anything about it until he returned from Houston. Two people who were on the road that night near the place where the assault took place testified to having heard the most agonizing screams and calls for help by some woman and that they saw a woman struggling in a car. The next morning after the occurrence the girl went to a doctor who examined her arm and found it badly bruised. Two or three days later this same physician examined the girl and testified that her privates were bruised and red and showed to have been penetrated. He further testified that from his experience as a physician it was his conclusion that prior to the time of this act said girl was a virgin. He further said her privates were very small. The State introduced three witnesses to whom appellant talked the next day after the alleged rape. One swore that appellant said to him that morning: "I went out with a little girl and had a hell of a time, but I got what I went for." Another said appellant told him that "He went out the night before with a G—d d— little whore and that he carried her out a piece and didn't have no luck with her, and said the next time he carried her out far enough, and said he had plenty of hell with her but he got it just the same." The third man testified he heard appellant say: "I was out last night with a little old girl and she wouldn't give it to me, so I tore the damned bitch's drawers off and took it away from her."

Keeping these facts before us, we examine bill of exceptions No. 1, first, as to its form, and if thereafter deemed proper, its contentions. That the bill sets out offered testimony in the most general terms much of which would be inadmissible, can not be denied. For instance, it is stated therein appellant desired to ask prosecutrix if she had not gone to dances before she came to live in Bryant accom-

panied by girls who were common prostitutes and women of easy virtue. The character of associates of prosecutrix in such case is plainly inadmissible. Holsey v. State, 24 Texas Crim. App. 35; Hudson v. State, 41 Texas Crim. Rep. 453; Cloninger v. State, 237 S. W. 288. It is also stated in said bill that appellant wished to ask prosecutrix if she had not been put off a dance floor for indecent dancing and conduct before coming to Bryan. Testimony of individual acts of misconduct can not be given in evidence to impeach a witness. Hays v. State, 90 Texas Crim. Rep. 360; Branch's Ann. P. C., Sec. 168, and cases cited. The opinion of a floor manager at a dance that the dancing and conduct of prosecutrix justified him in putting her off the floor, would be wholly incompetent.

Other matters about which appellant desired to ask prosecutrix are stated in the same general way, it being stated that some of these things she would admit and some she would deny but which of which is not averred. It is further stated appellant wished to ask her if she had not gone out to "drunken parties" with a half dozen named young men. Manifestly such a question would call for an opinion as to the character of the parties and would be incompetent, but the form of no particular inquiry proposed, is set out in this lengthy bill, no frame or form of any question proposed to be asked being stated.

It also appears in the bill that appellant wished to ask prosecutrix if on each occasion above referred to, i. e. each drunken party, she would not get drunk and hug and kiss the boy she was out with. We do not think such inquiry admissible. It is true Mr. Underhill in his work on Criminal Evidence, 3d Ed., p. 589, says:

"Evidence of drunkenness and dissipation, of the keeping of late hours and of street walking, on the part of prosecutrix will always be received."

We regard such a statement as unfortunate because of its inclusiveness. Mr. Underhill cites only two cases in support of this text, viz.: Cloninger v. State, 91 Texas Crim. Rep. 143, 237 S. W. Rep. 288, and Brennan v. People, 7 Hun (N. Y.) 171. Both cases have been carefully examined. We find absolutely nothing in the Cloninger case, supra, which supports the quoted text. In that case there was neither proof made nor offered that prosecutrix was drunk, or that she ever drank, or that she was dissipated, or a street walker, or that she kept late hours. That prosecution was for rape under a statute which by its terms relieved the accused from guilt if prosecutrix was not a chaste woman at the time of his connection with

her. There was no question of consent vel non in that case. Brennan v. People, supra, on its facts showed a woman asserting that the accused and five other men by force carried her behind a pile of lumber where the accused and four others held her while the sixth man ravished her. The accused offered a witness who would have sworn that after having taken liquor with him in a saloon, this prosecutrix then took him to some lumber yard in which she claimed to have been raped, and there she besought him to have carnal knowledge of her; also another witness who observed prosecutrix sitting near a man on a pile of lumber at the same lumber yard, and that she was exchanging caresses with this man, and presently they disappeared together behind a pile of lumber. The rejection of this testimony was held erroneous on citation of Woods v. People, 55 N. Y. Rep. 515, and People v. Abbott, 19 Wend., 192. We have no doubt of the correctness of the opinion in the Brennan case, supra, but think it not to justify the broad statement made by Mr. Underhill as upon its authority. Nor do we think when considered in the light of the authorities cited as a basis for his conclusion, that the statement of Mr. Underhill can be cited as any authority for the admission of the testimony set out by appellant in the bill now under consideration.

As we understand the rule from all the authorities, none of them go further than to hold that in cases where the accused claims to have had carnal knowledge of the prosecutrix with her consent, that this entitles him to prove facts tending to show that he did have such consent. True, the accused in such case is entitled not only to testify himself to such consent, but he may fortify his testimony and support it by other proof showing such consent, and this other proof may be by circumstances as well as by direct testimony. The question arises, does proof by a witness that he took a young girl, a working girl, if you please, to a party and that she became under the influence of intoxicating liquor, and while in such condition hugged and kissed him, but in no case went further,—tend at all to prove her a street walker or a prostitute, or that at another time, with a stranger and while entirely sober, she yielded her person to him? The writer does not think so. On the contrary, when appellant names, as he does in this bill, six young men, each of whom he has present as witnesses, and by each of whom he proposes to prove that he carried this prosecutrix to a party, that she became intoxicated and hugged and kissed him,—but by none of whom does appellant offer to prove that she permitted indecent liberties with her person,

or that she had or agreed to have carnal knowledge of anyone of said parties, or that such subject was broached or discussed among them, or between themselves and others so that it might have affected her reputation for chastity,—it would seem that such proof would have more force as showing or tending to show the girl a virtuous woman, and one who would not bestow carnal favors even on her friends, or those who might be her chosen escorts and who were to some extent on terms of intimacy with her. It seems to the writer that the tendency of such proof would be strongly against the influence that alone could have application to the case before us, viz.: that such a girl while wholly sober would meet a stranger and act as he claims this girl acted, that is, struggled and resisted for an hour or more before he finally accomplished his purpose with her consent. The analysis of the proposed testimony might go a step further. The thing sought to be established by the use of such testimony was consent on the part of the prosecutrix to carnal intercourse with him. He offered the above proof. The court below told him, as the bill of exceptions shows, that he would permit testimony showing that the girl had had illicit intercourse with any man,—also evidence that her reputation for chastity was bad, but that he would not allow the witnesses named to give the testimony set out in the bill of exceptions. It is, to say the least, strongly suggestive that if no one of six young men,—all of whom had been to parties with this girl, and all of whom had hugged and kissed her when she was under the influence of intoxicating liquor,—would testify that she had consented to actual or prospective intercourse with him, or that discussion of this or other conduct between these young men or between them and others had in nowise given the girl a bad reputation for chastity, this fact would seem to have much force in justifying the trial court in rejecting the offered testimony. A claim that certain facts would establish tendencies to certain results, would be but empty pretense in the face of the necessary influence that none of a large number of witnesses, all of whom knew and would testify to the tendency facts,—had ever known or heard of the coming about of the supposed result from the existence of such tendency facts. The words "necessary inference" are used because the witnesses were present; the effort to break down this girl was supposedly honest; the court had told the defense they could prove bad reputation for chastity, or acts of intercourse with other men. They do not set up in their bill that they could prove such things by any of them, nor were any of them used to prove acts of intercourse on her part. It seems to

the writer that it would be far better to adhere to the long established rules of procedure in Texas in such regard, than fly to speculative ills, we wot not of. Young America in 1929 seems not as adverse to hugging and kissing friends of the opposite sex, as may have once been the case,—but this would hardly justify the legal conclusion that such conduct tends to show lack of chastity. Nor is the fact of one becoming under the influence of strong drink, even if deplorable, to be held in law to involve sexual or other immorality, or even to tend in that direction.

It has been held universally in our courts that in rape cases when consent was an issue, the general bad reputation of prosecutrix for chastity might be shown as having a tendency to weaken the State's claim for non-consent. Many cases are cited at page 1003, Branch's Ann. P. C. Also in rape cases where such proof bears on a material issue, testimony may be competent that the prosecutrix has been carnally known by others than the accused. Illustrating,—such proof is admissible where the woman asserts that the act of the accused caused her pregnancy, it being held that proof that she has been with another man tends to destroy this claim. Branch's Ann. P. C., p. 1003. So when there is proof by the State that the parts of the female show that she has been carnally used, the accused may show that such condition could have resulted from acts with others. Branch's Ann. P. C., p. 1004. So, when prosecutrix testifies that the act with the accused was her first and only act and that it caused her great pain and injury to her health. Stafford v. State, 285 S. W. Rep. 314. So also when there is proof that prosecutrix when upbraided for her intimacy with a certain person, threatens that if there be further talk of it, she will lay it on the defendant who is being prosecuted. Shoemaker v. State, 58 Texas Crim. Rep. 518. So when prosecutrix swears that the rape by accused was her first experience, and that it hurt her so she almost fainted. Bigliben v. State, 68 Texas Crim. Rep. 530. These cases were probably had in mind, when the trial court offered to allow proof of acts of intercourse with any man. They are the exceptions to the general rule obtaining in this State from the beginning, to the effect that testimony of particular instances of intercourse by prosecutrix with others, will not be admitted. Dorsey v. State, 1 Texas Crim. App. 33; Mayo v. State, 7 Texas Crim. App. 349; Lawson v. State, 17 Texas Crim. App. 302; Price v. State, 44 Texas Crim. Rep. 304; Knowles v. State, 44 Texas Crim. Rep. 325; Clardy v. State, 147 S. W. 568; Wood v. State, 80 Texas Crim. Rep. 409. In passing

we note that in the case last mentioned the court below excluded the testimony of a witness for the defense who swore that he hugged and kissed prosecutrix, and this court upheld said action of the trial court and cited Kearse v. State, 88 S. W. Rep. 364, wherein the court below refused to allow a defense witness to swear that prosecutrix kissed him, this court observing that from such proof it would not follow that she would allow another man to kiss her.

This brings us to another view of this case. Prosecutrix swore the rape was by force and against her consent. Her escort, the seventeen year old boy above referred to, says that the rape was by force; that she resisted till weak and limp, and that she was sick, and called for help, etc. Appellant himself told parties the next day that he tore her clothes and took it away from her. Other persons heard her agonizing screams and saw her scuffle to get out of the car. The very next day bruises were observed on the arms of prosecutrix, and two or three days later her privates were examined and found to be bruised and inflamed, and the opinion was expressed by the examining physician that this was her first act of intercourse, and that her privates appeared very small. In Wilson v. State, 17 Texas Crim. App. 525, Judge White, for this court, speaking of newly discovered testimony affecting the female's reputation for chastity, said:

"No amount of evidence as to the prosecutrix's want of chastity should overcome proof of the fact that she was ravished by force, as shown by the violence or marks of violence upon her neck and other portions of her person, and her condition, mental and physical, immediately after the occurrence, as testified to by the witnesses."

The substance of this announcement has strong application in this case. It would seem idle that the admission of testimony claimed by the accused to have a tendency to affect the reputation of this girl, and to have a tendency to show that she consented, should be given any weight in the face of facts such as are above set out. This is especially true in view of the fact that the defense produced a witness who testified to substantially the same facts, without objection, which appear attributed to the witnesses whose testimony was rejected and complaint made thereof in bill of exceptions No. 1.

Nolan v. State, 48 Texas Crim. Rep. 436, is referred to in our former opinion of reversal. The opinion in that case bristles with trial errors, and without setting same out in any sort of detail further, said opinion states that the record contained various bills with reference to the refusal of the court to permit appellant to prove acts

of prosecutrix subsequent to the alleged seduction going to show illicit relations and lascivious conduct with other parties than defendant. We do not know what the bills in that case contained, but the case of Davis v. State, 36 Texas Crim. Rep. 548, is cited in support of the above holding, and reference to that case reveals that in it the defense wished to prove by three men that the alleged seduced female had had carnal knowledge of each of them, which testimony was held relevant and we think properly so. No case has value as a precedent or as authority for a given holding unless we can know the point raised, the facts relative thereto, and the principle involved. The Nolan case, supra, might be authority for allowing proof of illicit relations, i. e. carnal intercourse,—had by prosecutrix with another or others, but not as authority for holding it proper to prove that the prosecutrix in this case had been hugged and kissed by young men friends. We think to call such conduct lewd or lascivious a serious error in legal conclusion.

Said bill further states that all witnesses named would testify on each occasion of the parties referred to, prosecutrix would become intoxicated, fondle the men and the men fondle her. Such statements are wholly indefinite. We do not know what legal significance attaches to the word "fondle." Mr. Webster attaches no criminal meaning to a word which he defines as to handle tenderly. This statement in the bill could be taken to mean no more than that these witnesses would each testify to the matters more specifically elsewhere attributed to them in the bill. This but further illustrates the objectionable character of this bill which sets out many things as desired to be proved which appear wholly inadmissible and commingled with others of doubtful competence, and some which might be admissible. Hundreds of cases might be cited holding that a bill in this condition should not be considered. Payton v. State, 35 Texas Crim. Rep. 510; Tubb v. State, 55 Texas Crim. Rep. 623; Cabral v. State, 57 Texas Crim. Rep. 304, are mentioned. We are of opinion upon more mature consideration that bill of exceptions No. 1 should not have been considered, and that the rules in this State regarding the admission of testimony in rape cases are too well settled and understood to be infringed upon or changed. The cases above referred to as allowing proof of intercourse with others seem to fairly lay down the correct rules in that regard.

We are of opinion that this case was properly decided in the original opinion. The State's motion for rehearing will be granted,

the judgment of reversal will be set aside, the appellant's motion for a rehearing as originally filed will be overruled, and the judgment affirmed.

*State's motion granted and judgment affirmed.*

CONCURRING OPINION ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—I am in accord with the state's contention that bill of exception number one is not entitled to consideration. An examination of it at first leaves the impression that appellant was curtailed in his cross-examination of prosecutrix. Among other things it recites that he wished to ask her, (a) if she did not attend drunken parties with six certain boys who are named; (b) if she did not go out in company with girl companions who were "prostitutes and of easy virtue," (no girl is named in the bill,) (c) if on one occasion—not specified—she did not get so drunk she had to be taken out of the car and laid on the grass for several hours until she could get in condition to be carried home, etc. The bill recites that she would have admitted some of these things and denied others. It is not more specific regarding what she would have admitted or what she would have denied. With the bill in such uncertain terms we go to the statement of facts and from it find that prosecutrix on cross-examination by appellant did testify upon the very matters referred to in the bill as follows:

"For several weeks or months before this happened I had not been going out on drinking parties with married men and single men. I have not been out on a number of parties with any man. Yes, I have been out with Sam Sausage. I did not take him out to my uncle's and tell him where I could get the stuff to drink. I did not go myself and get the drinks from my kin folks out there. I did not go out there and get it. I did not swear on the habeas corpus trial that I went out there with Sam Sausage and that I got so many bottles of beer. Yes, I know Mr. Hollick. I did not go out to his house with Sam Sausage and get eight bottles of beer. As to whether I swore on the habeas corpus trial we drove back down the road on to a bridge and four of us drank it up, I drank beer over at the house. Hollick is not kin to me at all. No one in his family is kin to me. I don't remember who all was on that drive. As to whether Agnes Studinsky, myself, Sam Sausage and another boy in Sam Sausage's mother's car went out to this place and got this beer and drove down on the bridge at night and set on the bridge

and drank this eight bottles of beer, I do not know of any bridge around there. We did not go there to get beer, we went over there to be going, Yes, we got beer there, Mr. Hollick give the boys some beer. I did not tell them it was my kin folks and that I knew where I could go and get the beer. I had never been there before. I did not go up there and talk to them because Hollick couldn't talk English, I did not get any beer there. As to whether I said a while ago that he give the boys some beer, I don't know what he give them or how much, Yes, I saw some of it. I tasted some of it and threw it away. I don't know whether any of them drank any or not. I do not say that I like beer. I used to like it but don't like it now. I like it through the summer, what about it? No, I do not like whiskey. I drink hot toddies through the winter, yes. I drink hot toddies through the winter and cold beer during the summer. I have not been out with Vance Bigham and Mrs. McClellan on a drinking party. I never did go out with them drinking. I am sure about that. Yes, I know Mrs. McClellan. I was never out in a car with her drinking, I don't remember it. I never went out with anybody else in a car on a drinking party and got so drunk they had to bring me home. They brought me home whether I was drunk or not. Nobody has taken me out when they brought me home. I have not been out with married men. I did not go out with Buddy Knolls and Troy Gossett and go to a dance with them. I did not know anybody by the name of Knolls. I have never been out at night in a car with him. I have not been out with Vance Bigham in a car and got drunk. I have not been out with Vance and Mrs. McClellan. That is not true. I have been out with Troy Gossett. As to whether I drank a good deal with Troy Gossett that night and got pretty well intoxicated, I have drank with him one time in my life. I don't remember who else was with us on that trip."

The boys mentioned in this cross-examination were four of the very ones named in the bill. The cross-examination indicates that the court did permit prosecutrix to be questioned regarding many things referred to in the bill. If the boys had been called as witnesses and the court had declined to permit them to testify to some specific matter then this court would be able to tell whether appellant was within the principles heretofore announced, or whether he was seeking to extend rules heretofore held within well defined limits. No such concrete question is presented.

For the reasons mentioned I concur in the opinion of affirmance.

DISSENTING OPINION.

MORROW, Presiding Judge.—Being unable to agree to the affirmance of the judgment, I dissent from the opinions of my associates in granting the motion for rehearing of the State. Regarding the reversal of the judgment, as ordered in the opinion of the court rendered on the 19th of June last, as the proper disposition of the appeal, I, without writing further, express my adherence to the action of the court and the reasons therefor embraced in the opinion last mentioned.