WILL GROHOSKE v. THE STATE.

No. 15077.   Delivered April 20, 1932.
State's Rehearing Denied June 8, 1932.
Reported in 50 S. W. (2d) 310.

The opinion states the case.

*Cecil R. Glass,* of Marlin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, two years in the penitentiary.

The record in this case shows that on June 8, 1931, at which time this case was first set for trial, a witness named Murphy was not then present. For sufficient reasons the case was reset for July 6th following at which time no application for a continuance was made based on Murphy's then absence. The application was traversed by the state, and the court heard evidence and refused the continuance. When the motion for new trial was heard, one ground of which was the refusal of the continuance, the court heard other evidence, and we think him justified in concluding that Murphy was a transient person, and that there was little or no likelihood of ever getting him before the court; also that if before the court he would not likely give the testimony said to be expected of him if present.

In six bills of exception appellant presents his objection to the testimony of six witnesses, in effect, that after deceased was shot and fell to the ground, he lay for some time, and that a brother of appellant, who was with him when the shooting took place, walked over to where the wounded man lay and examined him by the aid of a flash-light, then told a number of persons, who attempted to go to him, to "stand back"; that presently a car came around the dance hall building near which the shooting occurred, and ran over the body of deceased who was still alive; that appellant was not present when this occurred, but was somewhere around the grounds. The object of such proof on the part of the state is not perceived. To each of said bills of exception the court appends the same explanation, but same consists merely of a recital of facts and advances no reason justifying the admission of such testimony. Appellant was not present. The facts were res inter alios acta. Nothing suggested knowledge of or responsibility for the acts of appellant's brother in telling people who may have desired to aid deceased, to stand back, or that the act of the party who ran an automobile over the dying man was known to, acquiesced in, or directed by appellant. To admit against appellant facts easily calculated to arouse resentment or feeling against some one, should not be allowed unless pertinent to some issue in the case.

No rule is better settled than that a witness, be he defendant or some other, can not be impeached upon an immaterial matter, nor can the reputation of any witness be attacked by proof of specific acts of misconduct. By four bills of exception appellant complains of the admission of testimony as to acts of his, in no way connected with or growing out of this homicide, which proof was intended to reflect upon his reputation.

Buck Gilmore swore that appellant on one occasion hit him with a black-jack, knocked him down, and broke his tooth. Paul Kluck swore that one time appellant slapped him first on one side and then on the other, and when witness jerked away appellant drew his gun on him and told him to come back. Lynn Pittman swore that he and appellant got into a heated argument, and appellant jumped behind a tree and grabbed his gun, witness being in his shirt sleeves and having no weapon. Will Menser swore that he had a difficulty with appellant at a barbecue, and that appellant was staggering, but he could not prove appellant was drinking. Each bill presenting such complaints is qualified by the statement of the trial court that appellant used witnesses to prove his good reputation as a peaceable, law-abiding citizen, which witnesses were asked on cross-examination if they had heard of one or more of the matters herein above set out, and that when appellant took the witness stand in his own behalf he was asked about and denied each of the occurrences referred to, and that the testimony in each bill was admitted only for the purpose of impeaching appellant as a witness. There is no question under the authorities but that a witness who testifies to the good reputation for peace and quietude of another, may be asked on cross-examination if he has not heard of acts of misconduct on the part of the person to whose good reputation he has borne witness, the purpose of such cross-examination being to test his knowledge and the accuracy of his testimony. Mr. Branch on page 117 of his Annotated P. C. cites many authorities holding such cross-examination proper, among them being Young v. State, 41 Texas Crim. Rep., 445, 55 S. W., 331, and Stull v. State, 47 Texas Crim. Rep., 547, 84 S. W., 1059. But to ask the appellant when on the witness stand if he was guilty of such specific acts, and upon his denial of same, to prove by other parties his guilt thereof, would be,—and in this case is,—violative of the rule against impeachment by proof of commission of specific acts in matters wholly disconnected, as well as the rule that one can not be impeached by proof of matters not connected or shedding light on the issues properly involved in the case, and hence immaterial. In section 168 of his Annotated P. C. Mr. Branch cites numerous cases upholding the proposition that evidence of particular acts of misconduct is not admissible to affect the credibility of a witness. See Ware v. State, 36 Texas Crim. Rep., 599, 38 S. W., 198; Red v. State, 39 Texas Crim. Rep., 422, 46 S. W., 408; Hays v. State, 90 Texas Crim. Rep., 360, 234 S. W., 898; Satterwhite v. State, 113 Texas Crim. Rep., 670, 23 S. W. (2d) 356. It thus appears that we have here the fact that in four instances the state impeached appellant by proof of specific acts denied by him, in no way arising out of or pertinent to the issues involved in this murder case. The impeachment of the accused on an immaterial matter may be of tremendous harm to him. In this case the difficulty which ended in the shooting took place in the

night when, in the very nature of things, attempted description of what was done by one or the other, especially when viewed from the standpoint of bystanders, becomes more or less subject to question, and the account thereof by the principals or by the surviving defendant would become exceedingly material. Certainly when the accused stands before a jury discredited by proof that in disconnected and immaterial matters he has falsified, this could easily lead them to believe that he would lie about the material points in the case. We have no doubt about the error of the matter under discussion or its possible harm to the accused.

Those bills of exception complaining of proof of the good reputation of deceased while he lived in San Saba county prior to moving to Falls county, seem of no avail. Newells v. State, 100 Texas Crim. Rep., 261, 272 S. W., 492.

There is a bill of exception taken to the overruling of appellant's objection to a question propounded to him by the state when a witness as to how much money he had made out of his office as constable during the eight preceding years. There appears no tangible wrong since appellant answered he did not know. Such questions can have no bearing on the case and should not be asked. The same observation holds good as to proof that deceased and his mother owned a good sized farm.

We have examined the other complaints appearing in the record, and believe them not well founded.

For the errors mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*