### W. G. GRAHAM V. THE STATE.

No. 16308.   Delivered November 8, 1933.
State's Rehearing Denied, Without Written Opinion, January 24, 1934.
Reported in 67 S. W. (2d) 296.

The opinion states the case.

*W. C. Morris, S. B. Ehrenwerth,* and *G. H. Cavanaugh,* all of Houston, for appellants.

*K. C. Barkley,* Crim. Dist. Atty., and *Percy Foreman,* Asst. Crim. Dist. Atty., both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape by force; the punishment, confinement in the penitentiary for fifty years.

The testimony of prosecutrix, Elsie Wells, was, in substance, as follows: Two or three months prior to the assault she had accepted an invitation from appellant to ride to town with him in his automobile. Appellant stated to her that he was preparing to open a beauty parlor, and suggested that she might secure employment in that business. On the night of February 6, 1933, she went to the apartment of Miss Ruth Fayle with appellant and J. K. Cartwright. There all of the parties drank some whisky. Later, she (prosecutrix), appellant, and Cartwright drove away in Cartwright's automobile. She requested appellant to take her home, but he refused to comply and drove out on the road, where he stopped the car. After the car had stopped she sat on the back seat with appellant. He assaulted her, and forced her to have sexual intercourse with him. Cartwright held her while appellant engaged in the act. Appellant beat her, and tore her clothing and undergarments. She fought to her utmost. She attempted to get out of the car, but appellant restrained her. After the act had been accomplished, appellant and his companion drove her back to town. At the first opportunity she left the car and went to a nearby residence, where she reported the matter to the occupants. The police were called, and appellant was immediately arrested.

Cartwright, testifying for the state, corroborated prosecutrix's testimony touching the assault made on her by appellant. He denied, however, that he held prosecutrix while appellant accomplished the act. He declared that he endeavored to force appellant to desist.

The proof on the part of the state showed that prosecutrix's clothes were badly torn; and that she was severely scratched and bruised.

Appellant testified that prosecutrix drove the car to the point where the alleged assault occurred. He said he was sitting on the back seat, and prosecutrix and Cartwright were on the front seat. He declared that they were all drinking whisky. He said that, while Cartwright and prosecutrix were on the

front seat, prosecutrix had her legs on the steering wheel and Cartwright was fondling her person. He testified, in substance, that prosecutrix told Cartwright that she would be his girl; that Cartwright stated that he was too old to have sexual relations with her, and suggested that she get on the back seat with appellant; that she immediately got on the back seat with him, and began "fooling" with his clothes; that he had on a ring that belonged to his deceased brother; and she tried to take the ring; that she suggested she might let his wife know about his presence with her; that he told her to keep her hands off of the ring; that she said: "You G— d— little b—d, you are just a cheap skate, that is all;" that upon making these remarks she scratched the blood out of his face; that he struck her two or three licks; that she viciously attacked him; that they continued to fight until a car came along. In short, appellant's testimony was to the effect that prosecutrix was the aggressor, and that her conduct was such as to invite both Cartwright and himself to have sexual intercourse with her. He said: "At no time did I have sexual intercourse with that girl. * * * I never did suggest anything of that kind. Such a thing never entered my mind until the suggestion was made— I never thought of such a thing. There was nothing but just a drunken fight and drunken brawl between me and this girl and Cartwright—that's all there was to it."

Eighteen bills of exception are brought forward, fifteen of which were prepared by the court upon his refusal to approve the bills presented to him by appellant's counsel. The first four or five of the bills prepared by the court relate to the refusal to permit appellant to ask prosecutrix on cross-examination as to specific acts of intercourse with various men in her apartment and in hotels. The bills recite that, if she had been permitted to answer, prosecutrix would have denied the acts. Bills of exception 8, 10 and 11, which were prepared by the court, relate to the court's refusal to permit appellant to prove by several witnesses that the general reputation of prosecutrix for chastity was bad. Bill of exception No. 6, which was also prepared by the court, is concerned with the court's action in refusing to permit a witness for appellant to testify that prosecutrix habitually spent the night in her apartment with various men. One of the witnesses would have testified that prosecutrix had undressed in his presence and had gone to bed with another man.

In offering the testimony shown in the bills of exception we have mentioned, appellant's counsel suggested to the court that such proof was offered in mitigation of the penalty, as affect-

ing the credibility of prosecutrix as a witness, and to throw light on her immoral character. The state's objection was that such testimony was inadmissible because of the fact that appellant had denied the act, and hence that there was no issue as to consent.

It is well settled in this state that when consent is an issue, the general bad reputation of the prosecutrix for chastity may be shown, as having a tendency to weaken the state's claim of nonconsent. Satterwhite v. State, 23 S. W. (2d) 356; Lawson v. State, 17 Texas App., 292; Branch's Annotated Penal Code, page 1003. Again, as bearing on the issue of consent, proof that the prosecutrix had had sexual intercourse with the accused on other occasions is admissible, but intercourse with other men cannot be properly received in evidence on this point. Satterwhite v. State, supra, and authorities cited.

There are exceptions to the rules to which we have adverted. Where such proof bears on a material issue, testimony may be competent that the prosecutrix had been carnally known by others than accused. For example, where the woman states that the act of the accused caused her pregnancy, proof that she had been carnally known by others is admissible to destroy this claim. Branch's Annotated Penal Code, page 1003; Satterwhite v. State, supra. So, when there is proof by the state that the private parts of the female show that she had been carnally used, the accused may show that such condition could have resulted from the acts of others. Branch's Annotated Penal Code, page 1004; Satterwhite v. State, supra. So, when prosecutrix testified that the act with the accused was her first and only act, and that it caused her great pain and injury to her health, proof that others had carnally known her is admissible. Stafford v. State, 285 S. W., 314. Again, when there is proof that prosecutrix when upbraided for her intimacy with a certain person, threatens that if there be further talk of it she will lay it on the defendant who is prosecuted, proof of acts of intercourse with others becomes admissible. Shoemaker v. State, 126 S. W., 887.

In the case of Lawson v. State, supra, it was urged that proof that the prosecutrix had had illicit carnal intercourse with other men should be admissible in mitigation of the punishment, if for no other reason. In passing on this contention, the court said: "We concede the force and apparent justice of the argument, and while in some of the states it has been adopted as the rule, still, the great weight of authority, and the decisions of our own state, are the other way." The case of Calhoun v. State, 214 S. W., 335, presented a situation in which this court

expressed the opinion that there was error in excluding testimony that the prosecutrix, who was a white woman, had habitually bestowed carnal favors indiscriminately upon negro men. In holding the proof admissible, this court, speaking through Judge Lattimore, used language as follows:

"It occurs to us that, in a case where the record discloses without contradiction that the female associated on terms of equality with negroes around their homes and around her home, the appellant should have been permitted to prove that the prosecutrix frequently left her home and went to spend the day in the woods with negro men, and, if the witness knew of his own knowledge, as appears from the bill of exceptions, that she was in the habit of bestowing carnal favors indiscriminately upon men, said witness might have been permitted to state that fact, as it would certainly have had a very strong bearing upon her credibility as a witness in the case and would have been a mitigating fact as bearing on the punishment."

In the opinion from which the foregoing is taken, Judge Lattimore criticised the rule inhibiting proof of intercourse with others when consent is an issue. He said: "It has often been held by this court that the accused might prove prior and other acts of intercourse between himself and the prosecutrix in cases of rape as bearing on the question of consent. While not called upon in this case particularly to discuss that question, this member of the court confesses his inability to see how instances of intercourse with the appellant on other occasions than the one charged would be admissible as bearing on consent, but instances of intercourse with men other than the appellant on other occasions would not be admissible for any purpose."

Also, in cases where the indictment charges rape upon a female under the age of consent, and such female testifies that she was forcibly raped, proof of previous acts of intercourse with other named men is admissible in mitigation of the punishment. Duty v. State, 25 S. W. (2d) 834; Lusty v. State, 261 S. W., 775.

It has been held error to refuse to permit the accused to prove, on the cross-examination of the prosecutrix, specific acts of intercourse with other men, where such admissions evidence a state of morals which would place the prosecutrix in the category of what is known as a common prostitute. Hastings v. State, 43 S. W. (2d) 113; Bigliben v. State, 151 S. W., 1044.

With the foregoing review of the rules, we consider the bills of exception to which reference has been made. That the trial court was in error in refusing to permit appellant to ques-

tion prosecutrix touching habitual intercourse with men in her apartment and in hotels seems clear. If this proof could have been elicited from prosecutrix, it would have disclosed a course of conduct placing her in the category of a common prostitute, and hence would have been admissible as bearing on her credibility as a witness. Hastings v. State, supra; Bigliben v. State, supra. However, in view of the fact that the bills show that prosecutrix would have denied the acts, reversible error cannot be predicated upon the action of the court in refusing to permit the questions to be answered. Again, we deem it unnecessary to decide whether, on the question of credibility, it was error to refuse to permit witnesses other than prosecutrix to testify to the alleged immoral conduct on the part of prosecutrix. Also, we do not decide whether such testimony was admissible in mitigation of the punishment.

Appellant having expressly declared that he did not have an act of intercourse with prosecutrix, there was no issue as to consent. Hence, the general rule that, on the issue of consent, proof is admissible that prosecutrix's general reputation for chastity was bad, and that she had engaged in previous acts of intercourse with the accused, would have no application. This does not mean, however, that testimony touching such matters would not be admissible if it tended to solve some other material issue in the case. Dyer v. State, 283 S. W., 820. For example, in Stafford v. State, supra, Stafford had raised the issue that penetration was not accomplished. The mother of the prosecutrix had testified as to the effect of the act on the physical condition of the prosecutrix, her testimony being to the effect that it ruined her health. It was held, as bearing on these issues, that testimony of intercourse with others than the appellant was admissible.

In the present case it has been observed that prosecutrix testified that her physical condition was due to the assault made upon her by appellant when he forcibly raped her. As supporting her testimony, her torn and soiled clothing were introduced in evidence. Her version of the transaction placed appellant in the attitude of taking her against her will to the place where the assault was committed, and of being the aggressor at all times. On the contrary, appellant's version placed prosecutrix in the attitude of going voluntarily to the scene of the alleged assault and engaging in conduct common to lascivious and unchaste women. If appellant were to be believed, prosecutrix, in effect, solicited Cartwright to have intercourse with her, and thereafter placed herself in a position to encourage him (appellant) to carnally know her. Again, appellant attributed the

physical condition of prosecutrix and the condition of her clothing to a drunken fight between him, prosecutrix and Cartwright, which he said grew out of and was connected with the conduct on the part of prosecutrix he had described. In this condition of the record, it occurs to us that proof that prosecutrix bore the general reputation of being unchaste and had habitually engaged in acts of sexual intercourse with others was admissible as shedding light on the transaction. Such proof would have tended to explain the conduct of prosecutrix on the night in question. In its absence, it would appear that appellant's version of the transaction might be deemed incredible; whereas, if the jury had had such proof before them the conclusion might have been reached that the condition of prosecutrix resulted from a fight in which she was the aggressor. In other words, the jury might have concluded that she sought to bestow carnal favors, which were rejected, and that, as a result, a fight ensued in which she received the injuries described in the testimony. In his Annotated Penal Code, sec. 97, Mr. Branch states the rule as follows:

"Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in issue any circumstances which tends to make the proposition at issue either more or less probable."

See McGuire v. State, 10 Texas App., 127; Lane v. State, 164 S. W., 380.

Again, in the same section, we find the following statement of the rule:

"Whatever material facts are introduced that tend to affect the issue, the other side has the right to deny, contradict or explain that testimony, showing its falsity, or breaking its force and effect in any legitimate way."

In support of the text many authorities are cited, among them being Lewallen v. State, 26 S. W., 832. That the testimony supported a pertinent hypothesis seems clear. Under the circumstances, we are constrained to hold that the matter presents reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.