### F. A. CAMPBELL V. THE STATE.

No. 22797. Delivered March 15, 1944.
Rehearing Denied April 26, 1944.

The opinion states the case.

*Ennis Favors*, of Pampa, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged by indictment with rape by force on the person of Neoma Cook, and by the jury convicted and given a term of five years in the penitentiary.

The prosecutrix was the wife of a soldier overseas, and the mother of an eight months old baby. She lived at Skellytown with her father and mother, and she, in company with another woman, obtained a ride with appellant in his car to Pampa. While there appellant assisted her in renting a room from Mrs. Gibson, and appellant then offered to take the prosecutrix and her companion back to Skellytown for her effects, agreeing to return her to Pampa. Appellant gave Mrs. Cook and her parents a different name than his true name, and promised to take good care of Mrs. Cook. He took her grip and a box of dishes and kitchen utensils and placed them in his car, and started back to Pampa. When he neared that town he stated that he would turn off the road a short distance to see his brother, and when going near a carbon plant he turned around a building where explosives were kept and stopped the car, and requested that prosecutrix allow him to get into her breeches. This she refused to do, and he then pitched her belonging out of the car, prosecutrix having gotten out, and drove off and left her out in the country with no houses near. Prosecutrix had a doll she had purchased for her baby, and with that in her hand she started to walk to town. Soon appellant stopped his car and came back to where he had dumped her belongings out and picked them up and put them back in the car, and told prosecutrix to come and get in the car. This she refused to do; he then got out of the car and came back to her, picked her up, and, despite her struggles, he carried her back and put her in the car, and raped her, she struggling and screaming, and honking the car horn until she broke it. He did not have to remove her panties, because the ones she had on were too large, being the ones used by her dur-

ing her recent pregnancy. Appellant then started driving into Pampa with her, but she was screaming so that he drove on and put her out on the other side of town. Prosecutrix soon found a phone and reported the matter to the officers. She was examined by a doctor two days thereafter, who testified she had bruises on her body and an ulcerated condition in her vagina, evidencing some recent force therein.

Appellant's version of this matter agrees with that of prosecutrix as far as the stopping near the house containing the explosives, also with her refusal to let him "into her breeches," also as to her getting out of the car, and his putting her things out; that he then decided to go back for her, and tried to persuade her to get back in the car, and she refused, and he "tried to talk to her and reason with her, and she commenced hollering and screaming, and finally I said, 'Get on back in the car. I don't want to bother you. I will take you to town.' And she got back in the front seat of the car and I got back in there, and I said, 'You are still not going to let me get in your breeches?' and she said, 'No,' and I said 'All right,' and we started off, and she said, 'You might think I am pretty cheap, or something, but I need money awfully bad,' and I said, 'You want some money, do you?' and she said, 'Yes,' and I gave her $20.00, and then is when I got in her breeches voluntarily, with her consent. I gave her the $20.00 before I got into her breeches. * * * Coming back to town * * * she said, 'If you don't give me fifty more dollars I am going to start screaming.' And I said, 'I haven't got fifty more dollars to give you; I think $20.00 is enough, anyway.' And she said, 'Well, I don't.' And by that time she was screaming and hollering at the top of her voice, and opened the door and trying to jump out, and I drove across town and put her out on the road * * * three quarters of a mile beyond the city limits."

Appellant was an ex-convict, with one conviction for robbery with a 60 year sentence, and one for forgery. Prosecutrix was 19 years old at the time and weighed 102 pounds.

Appellant made a statement which was reduced to writing and signed by him, which is practically identical with the story told by prosecutrix while on the witness stand. He claimed that this statement was made by him because he was told by the officers that unless he made such he would receive the extreme penalty of death, but that if he made such statement, he would get off light in his punishment. He also denied making some of the statements set forth in the confession. This matter was submitted by the trial court under proper instructions, and we see no reason to say that same was not sufficient.

The main ground of complaint herein lies in the failure of the trial court to admit the testimony of many witnesses whereby appellant attempted to attack the reputation of prosecutrix, not only for chastity but he also attempted to show that prosecutrix was by reputation a common prostitute.

The decisions in this State are to some extent confusing relative to the method of proving the reputation of one as a common prostitute, and as to the admissibility of such proof. It is a well recognized doctrine that where an accused is charged with statutory rape upon a female whom the proof shows to be within the ages of fifteen and eighteen years, that the question of her chastity becomes material because of the fact that the unchastity of such female is a defense under the statute, and one prior act of intercourse would constitute her an unchaste person. Many of the cases cited by appellant, allowing the introduction of other specific instances of unchaste acts, are those based upon accusations of rape under the age of consent, and are not usable as direct authorities herein. It was said in the case of Bigliben v. State, 68 Texas Cr. R. 530, 151 S. W. 1044, that:

"Of course, it is not intended to hold that other isolated acts of intercourse may be shown as affecting her credit, or for any other purpose,—but is only where by her whole conduct and course in life she manifests that low state of morals which would place her in the category of what is known as a common prostitute, that it becomes admissible. (McGrath v. State, 35 Crim. Rep. 413.) The court did not err in refusing to permit appellant to prove individual acts of intercourse."

There is also a general doctrine that unchastity of the female, when a defense, can be proven by circumstances, and all the cases furnished us by appellant's brief on this proposition are those concerned with statutory rape of a female under the age of consent.

We think the safe rule to be as set forth by Judge Christian in the case of Graham v. State, 67 S. W. (2d) 296, from which we quote:

"It is well settled in this state that, when consent is an issue, the general bad reputation of the prosecutrix for chastity may be shown, as having a tendency to weaken the state's claim of nonconsent. Satterwhite v. State, 113 Tex. Cr. R. 659, 23 S. W. (2d) 356; Lawson v. State, 17 Tex. App. 292; Branch's Annotated Penal Code, p. 1003. Again, as bearing on the issue of

consent, proof that the prosecutrix had had sexual intercourse with the accused on other occasions is admissible, but intercourse with other men cannot be properly received in evidence on this point. Satterwhite v. State, supra, and authorities cited.

"There are exceptions to the rules to which we have adverted. Where such proof bears on a material issue, testimony may be competent that the prosecutrix had been carnally known by others than the accused. For example, where the woman states that the act of the accused caused her pregnancy, proof that she had been carnally known by others is admissible to destroy this claim. Branch's Annotated Penal Code, p. 1003; Satterwhite v. State, supra. So, when there is proof by the state that the private parts of the female show that she had been carnally used, the accused may show that such condition could have resulted from the acts of others. Branch's Annotated Penal Code, p. 1004; Satterwhite v. State, supra. So, when prosecutrix testifies that the act with the accused was her first and only act, and that it caused her great pain and injury to her health, proof that others had carnally known her is admissible. Strafford v. State, (Tex. Cr. App.) 285 S. W. 314. Again, when there is proof that prosecutrix, when upbraided for her intimacy with a certain person, threatens that, if there be further talk of it, she will lay it on the defendant, who is prosecuted, proof of acts of intercourse with others becomes admissible. Shoemaker v. State, 58 Tex. Cr. R. 518, 126 S. W. 887."

The case of Satterwhite v. State, 113 Tex. Cr. R. 659, 23 S. W. (2d) 356, should have some influence with us in deciding this cause. In that case Judge Christian wrote originally and affirmed the same; Judge Morrow then wrote on appellant's motion for a rehearing, and granted the same, and reversed the cause; then upon the State's motion for a rehearing Judge Lattimore wrote, granted the State's motion, set aside the opinion by Judge Morrow, and the cause was affirmed, and Judge Hawkins wrote an opinion concurring with that of Judge Lattimore, and the cause was finally affirmed. The matters at issue in these four opinions were the introduction of proof of specific acts upon the part of prosecutrix going to show lascivious conduct with other men, drunkenness and various other claimed acts of misconduct, falling short of actual proven intercourse with others. This court finally therein approved the ruling of the trial court in which he refused to allow such specific acts of misconduct, leaving open the privilege to accused of proving recent acts of carnal intercourse with others, and reputation as a common prostitute.

In the present case, appellant desired to prove the fact of prosecutrix having drunk beer, of her being "tight" at a restaurant, of the presence of soldiers at her apartment, of her being seen walking down a railroad with a soldier, of her being accused of separating a man and his wife, of her being seen in bed with such man, of her wearing sun suits at her apartment and being upbraided by some of the neighbor ladies therefor, as well as other lesser ladylike qualities. Of course it is recognized that a rule to fit each case of this kind can not be laid down with perfect rigidity, the individual facts of each case demanding different applications thereof, especially in a case of this kind where the previous chastity of the female is certainly precluded, she being the mother of an eight months old child. We think it safe to say, however, that appellant should have been allowed to prove the general reputation of prosecutrix as a common prostitute, were he able to do so, as possibly throwing some light on whether she finally consented to the carnal act and not merely for the sole purpose of impeaching her credibility. See 39 Texas Digest, Sec. 340, p. 282, and cases cited.

It may be pertinent to here observe, as was said by Judge Lattimore in the Satterwhite case, supra, as follows:

"Young America in 1929 seems not as adverse to hugging and kissing friends of the opposite sex, as may have once been the case,—but this would hardly justify the legal conclusion that such conduct tends to show lack of chastity. Nor is the fact of one becoming under the influence of strong drink, even if deplorable, to be held in law to involve sexual or other immorality, or even to tend in that direction."

And we might add that the presence of sun suits in one's wardrobe, and the use thereof as wearing apparel at unseemly times and places, would not be calculated to offer plausible proof of one's moral condition, or a lack thereof.

We think the facts in this present case call for the ruling set forth in the Graham case, supra, and we think it was error not to allow the appellant to prove, if he could do so, the general reputation of prosecutrix as a common prostitute as affecting the matter of her consent or lack thereof to the admitted carnal act, and for that reason this judgment is reversed and the cause remanded.

## ON MOTION FOR REHEARING.

DAVIDSON, Judge.

The State challenges the correctness of our conclusion that the trial court's failure to permit the introduction of testimony showing that the prosecutrix not only had the reputation of being a common prostitute but was such in fact was reversible error. It is insisted that the facts fail to bring this case within the rule authorizing the admission in evidence of such testimony in a rape case; and, also, that, in view of the facts as a whole, together with appellant's written confession, the failure to admit said testimony was not such an error as would require a reversal of the case.

It must be remembered that appellant's sole and only defense was that the prosecutrix consented to the act of intercourse for pay, and that her outcry was prompted not by the fact that she had been assaulted, but by reason of appellant's failure to pay her more money. Under the authority of Graham v. State, 125 Tex. Cr. R. 210, 67 S. W. (2d) 296, the proffered testimony was material upon this defensive theory.

We remain convinced that reversible error is reflected by the record.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.