Argued October 27, affirmed November 26, 1952

# STATE OF OREGON *v.* GOGUEN

250 P. 2d 924

*George H. Brewster,* of Redmond, argued the cause for appellant. With him on the brief was James Bodie, of Prineville.

*E. D. Harris,* District Attorney, of Madras, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court, based upon a verdict, which adjudged him guilty of the crime of rape upon the daughter of his wife. The indictment charged, and the evidence showed, that the purported victim was under the age of 16 years. The indictment was based upon §§ 23-420 and 23-421, OCLA.

The defendant's brief submits two assignments of error. The first follows:

"The Court erred by instructing the jury:

" 'Now, I think I perhaps should say to you that the previous conduct of the girl is not a matter that enters into your consideration of this case except upon charges of frame-up and upon that alone. It isn't a question of the morality of the child. The law protects the girl under 16 no matter what her state in life. I might go so far as to say to you that a girl under 16 years of age with whom a man more than 16 years of age has intercourse is protected by this law, even though at the time she be an inmate of a house of prostitution. In other words, it is not her character or anything she might have done in the past as distinguished from a woman of mature years.' "

The second is phrased in these words:

"The Court erred in rejecting the offer of defendant's Exhibit A for identification."

Exhibit A is a book, in paper binding, 188 pages in length. The pages are four by seven inches in size. As a witness, the defendant described it as sexy, filthy literature, and claimed that he had found it in the possession of his wife's daughter, of whom we will speak as the prosecuting witness. The latter denied that she had read or possessed the book.

The defendant makes no contention that the state's evidence is insufficient to justify the verdict. We shall now consider the assignments of error.

At the beginning of the trial, defendant's counsel made no opening statement, but before the examination of the witnesses had progressed far he stated, in reply to an inquiry from the bench, "We want to show a frame up, as I am going to call it." Similar declarations were later made. After the state had rested, defendant's counsel, in outlining the defense which he was about to present, said:

"If the Court please, ladies and gentlemen: We will now undertake a defense of this case and I will tell you some of the things the defendant expects to show. In your interrogation of the jury we suggested we thought it was a frame up. We are going to prove a frame up. We are going to call one witness during the trial of this case that will show something that happened yesterday afternoon. We will expect to show on Friday, the 3d day of August, the trip was made to Redmond by Mr. and Mrs. Goguen and the girl said they took her to Madras and the mother said they left her at home to get dinner and I asked her fully of that as anything else. I will show you after Mrs. Goguen left as a witness from the witness stand and Doctor Harris was called to the witness stand, we expect to show that Mrs. Goguen and the girl had a conversation. The girl said: 'Mother, be sure and tell I went to Madras with you.' We expect to show you that this girl had made repeated threats, that she was going to get this man. We will show that by several witnesses. We will show you that by several witnesses. We will show the principal cause of trouble was in regard to the kind of books this girl was reading, sexy books.

"We will show all of the circumstances surrounding all of this thing that you may make your minds up that he is not guilty.

"We expect to show you the circumstances of the arrest so far as the Court will permit. He has ruled some of our things out but we will show a real frame up. We will show this girl's mother discussed about leaving with another man.

"We will expect to show you the mother was in the arms of Breshears and he was meeting her right along. We will show that she said she wished her husband wouldn't come after her because Everett would bring her home.

"We do expect to show those things. I won't take up much of your time, now. We will call Sergeant Hemmingway."

From the foregoing, it is seen that the instruction which is challenged by the first assignment of error pertained to a defense which the defendant had announced.

The exception to the instruction that the defendant saved, which is the subject matter of the first assignment of error, as stated in the bill of exceptions, is the following:

"The defendant excepts to the Court's instructions on the previous conduct of the complaining witness because (it is material in this case) inasmuch as the State offered proof of the breaking of the hymen and any previous conduct of the witness would be material so the defendant could rebut the doctor's presumption that the breaking of the hymen was done at the time of the alleged intercourse by the defendant. We also object to the instruction on the question of relationship because we think it is possibly confusing to the jury and contrary to the Court's instructions where the Court told them that was not material to the indictment."

*State v. Newburn,* 178 Or 238, 166 P2d 470, says:

"* * * We agree with appellant that when the state thus undertakes to corroborate the statement

of the prosecutrix that defendant had sexual intercourse with her, he has the right to rebut any unfavorable inference arising from such evidence by showing that the ruptured hymen may have been caused as a result of sexual intercourse with some other person.''

The defendant contends that he presented evidence which had a tendency to indicate that the complaining witness possibly had had sexual intercourse with someone else, and that the part of the instruction which told the jury ''the previous conduct of the girl is not a matter that enters into your consideration of this case except upon charges of frame-up and upon that alone'' rendered it impossible for the jury to consider whether someone else, and not he, was responsible for the ruptured hymen.

The evidence upon which the defendant depends to sustain his contention that he showed that the prosecuting witness possibly had had intercourse with someone else can be classified as follows: (1) evidence showing that she read sexy literature, of which Exhibit A is an example; (2) evidence showing that she, in company with companions of both sexes and of about her age, went upon automobile rides and in their course visited open air theaters and dark places upon the highway where they embraced each other.

We have given the defendant's characterization of Exhibit A; he termed it filthy and sexy. We made a hurried reading of Exhibit A in an effort to acquaint ourselves with its nature. The prefix to the book describes it as ''the world's most popular novel.'' It states that the Magistrate's Court of the City of New York and the Superior Court of Pennsylvania refused to suppress its sale. According to an advertisement which appears upon the back cover of the book, the

novel has been translated into twelve languages and more than six million copies of it have been sold. It and other books of its kind, similarly bound and printed, are offered for sale in large quantities in many places. Whatever may be the character of the book, it is certain that no woman ever received a ruptured hymen from reading it.

Obviously, if the evidence summarized in the preceding paragraph has no tendency to show that the prosecuting witness had had sexual intercourse with some third party, the defendant's assignments of error lack merit. The defendant has cited no authorities which intimate that evidence of the kind upon which he relies tends to prove sexual intercourse. Our examination of the precedents has disclosed those which we will now review.

In *People v. Mangum,* 31 Cal App2d 374, 88 P2d 207, the court, in affirming a judgment which convicted the defendant of the crime of rape by force and violence, took note of the rule that when such is the charge, proof of unchaste acts of the prosecutrix is admissible to disprove the allegation that the act was committed by force and against the will of the prosecutrix. The court held that no error was committed when objections were sustained to questions, of which the following were examples:

> "Now, I will ask you, Mrs. Amos, if you have not been taken home from the town of Tracy to your home, by police officers, while you were in a highly intoxicated condition?"
> "I will ask you, Mrs. Amos, if you know a man by the name of Glenn Stewart? I will ask you whether or not you have not been out with him at night when you were married?"
> "Mrs. Amos, I will ask you if it is not a fact that you have come home to your own home at 5 :00

or 6:00 o'clock in the morning in an intoxicated condition?"

It said:

"Such questions are also inadmissible for the reason that they would not bring out any facts proving, or tending to prove that the witness had engaged in prior acts of sexual intercourse."

*State v. Smailes,* 51 Idaho 321, 5 P2d 540, in sustaining the conviction of the defendant upon a charge of rape of a girl less than 18 years of age, said:

"There was no error in refusing the following offer of proof while the witness Laverne Lambert was on the stand: '* * * We intend to prove by the witness now on the stand that the prosecuting witness told her, the day that this party took place, on the 16th day of January, that she was out the night before to a dance with a man by the name of Leo Ratsaw, and the prosecuting witness told her that this Ratsaw took her out in a car and that they were out until a late hour in the morning; that they went to Clarkston and they got some wine and she got pretty drunk.'
"No foundation was laid for impeachment. State v. Farmer, 34 Idaho, 370, 373, 201 P. 33. Furthermore, the offered testimony went no further than an offer to prove prosecutrix had an opportunity to commit another illicit act. * * *."

In *State v. Brown,* 185 Minn 446, 241 NW 591, the defendant, who had been convicted of attempted rape, claimed that error was committed when evidence was excluded which he offered for the purpose of showing that the prosecuting witness, 18 years of age, lacked chastity. We take the following from the decision:

"The principal complaint made and argued here is that the court excluded evidence offered by the defendant to show that the complainant, a girl of 18 years of age, had attended dances at three or

four dance halls, which the proposed evidence of one witness characterized as 'of questionable repute; that liquor was sold at these places.' Defendant further offered to show that on several occasions she asked for and drank intoxicating liquor and on some occasions smoked cigarettes; that on one occasion she tussled with several 'fellows'; that some of them lifted up her dress and she swore at them for so doing; and that on two occasions she was 'under the influence of liquor.'

\* \* \*

"The offered evidence excluded by the court had no connection in time, place, or otherwise, with the crime charged. If we assume, without so deciding, that evidence of specific acts, unconnected with the crime charged, is admissible in cases of this kind for the purpose of showing or tending to show want of chastity, as bearing on the question of consent, nevertheless there was no reversible error in excluding the offered evidence. One who undertakes to prove the unchastity of a young girl should be required to offer rather definite proof thereof. No such proof was offered. That complainant on some occasions drank liquor, once or twice was under the influence thereof, smoked a few cigarette, attended dances at several dance halls, and was somewhat indiscreet in her behavior, is not sufficient."

The judgment of guilt was affirmed.

In *People v. Merrill,* 104 Cal App 2d 257, 231 P2d 573, the court, in affirming the defendant's conviction upon a charge of rape with force and violence, said:

"Defendant contends that this evidence was admissible on another ground, namely, to prove unchastity. Proof of unchastity is admissible in a case where the charge of rape is by force and violence. Assuming that frequenting bars would be evidence of unchastity, it does not appear how frequenting bars after the attack would be material. These questions and the offer of proof were directed

toward Mary's action subsequent to the attack. Obviously her acts in this respect subsequent to the attack would not be material. But a more important answer to the contention is that mere frequenting of bars does not tend to prove unchastity."

From *Pylant v. State,* 191 Ga 587, 13 SE2d 380, we take the following:

"On a prosecution for the offense of rape, where it was claimed by the State that the defendant committed the offense by having consensual sexual intercourse with a female under the age of fourteen years (the defendant's own daughter), it was not error to refuse to allow the defendant's attorney to ask such female on cross-examination whether she was acquainted with a named boy, or whether she did have 'some boy friends'; the stated purpose of such interrogation being to show other acts of intercourse by such female. Whether or not any evidence would have been admissible for that purpose (see Latimer v. State, 188 Ga. 775, 4 S.E.2d 631), the testimony which the defendant sought to elicit would not have tended to establish the contention made. Nor did the court err in refusing to allow the attorney to ask the same witness whether another girl, naming her, had accused the latter's father of 'the same thing.' "

The following is taken from *Ledesma v. State,* 147 Tex. Cr. 37, 181 SW2d 705, which affirmed the defendant's conviction of the crime of rape:

"Bill No. 5 reflects the following occurrence: Appellant called W. E. West, the former husband of the prosecutrix, as a witness in his behalf. In the course of his examination, counsel for the defendant asked him why he obtained a divorce from the prosecutrix, to which the State objected, which objection was sustained by the court. Thereupon, appellant's counsel requested the court to permit him to take the answer to said question, in the ab-

sence of the jury, for the purpose of preparing his bill of exception, which said request was denied by the court and the defendant was not permitted to obtain such answer; that if said witness had been permitted to answer the question, he would have testified that he obtained a divorce from the prosecutrix because she was keeping company with other men, to which ruling of the court the defendant then and there duly excepted. We do not regard the proffered testimony admissible under the following authorities: Graham v. State, 125 Tex. Cr. R. 210, 67 S.W.2d 296; Tyler v. State, Tex. Cr. App. 167 S.W.2d 755; Satterwhite v. State, 113 Tex. Cr. R. 659, 23 S.W.2d 356. The excluded testimony, in our opinion, was not such as tended to show that the prosecutrix was an unchaste woman or that her reputation for chastity was bad.''

*State v. Esposito,* 122 Conn 604, 191 Atl 341, in sustaining a judgment which convicted the defendant of rape, said:

''* * * In defense the defendant offered testimony which he claimed would show that on a certain occasion the complaining witness met a man on the street, asked him to give her a drink of whisky, went to his apartment with him, and remained there alone with him, drinking, until 5:30 the next morning. That she had been drinking on that occasion obviously would not contradict her testimony as to the extent to which she had drunk liquor previous to the night of the assault. Nor would her remaining in the man's apartment in itself justify the jury in drawing the inference that she had had intercourse with him, and so be relevant, as the defendant claims, upon the issue of her willingness to submit to him on the occasion in question.''

In the present instance, all of the evidence offered by the defendant which had any bearing upon the chastity of the prosecuting witness was received, with the exception of Exhibit A. For the purpose of de-

termining the merits of the defendant's first assignment of error, we will assume that Exhibit A is a part of the evidence. The evidence before a jury must bear such a logical relationship to the conclusion which a party wishes the jury to draw that the conclusion becomes a reasonable one. In other words, a logical relationship must be established between the evidence presented and the fact in issue.

In the present instance, the facts are that the prosecuting witness (1) had a ruptured hymen; (2) read sexy literature; and (3) went upon automobile rides with groups of young people, in the course of which couples of the opposite sex embraced each other.

We do not believe that a logical relationship exists between fact number one and those which we have preceded with numerals 2 and 3. It may be that if facts two and three were supplemented with other relevant facts, a conclusion favorable to the defendant would be warranted. Without further analysis, we express our belief that (1) the relationship between Exhibit A and the condition of the girl was too remote to render it relevant, and (2) no logical relationship existed between the evidence presented by the defendant and the conclusion which he wished the jury to draw. It is our conclusion that the defendant's assignments of error lack merit.

The judgment of the circuit court is affirmed.