Thomas CAPPS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00346–CR.

Court of Appeals of Texas,
El Paso.

Sept. 4, 1985.

R.C. "Eric" Augesen, Dist. Atty., Odessa, for appellant.

H. Thomas Hirsch, Nunley & Hirsch, Odessa, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for aggravated rape. The jury assessed punishment at seventy-five years imprisonment. We affirm.

■ In Grounds of Error Nos. One, Two and Three, Appellant contends the evidence was insufficient to support a finding of aggravation by threat of imminent serious bodily injury or death. Appellant relies upon *Blount v. State,* 542 S.W.2d 164 (Tex. Crim.App.1976) for the rule that a conditional threat of death if the crime were reported does not equate to a threat used to compel submission to the sexual act itself. We must examine the present record in the light of *Blount.*

Viewed in a light most favorable to the verdict, the evidence reflected that the Appellant broke down the door of the victim's mobile home and dragged her out by her hair. He struck her once in the mouth, chipping a tooth. They drove to his house. On the way, prior to the sexual act, he repeatedly told her he would kill her if she reported the incident to anyone. If we were to apply *Blount* literally, we would at this point have to impose upon the victim a pre-rape understanding that his threat was only intended to enforce fears, not to effectuate the rape itself. At the destination, he forced her inside, pushing her and again pulling her by the hair into a bedroom. He ordered her to undress and get into the bed. He ordered her to fondle him. When she refused, he withdrew an object, which he said was a gun, from the side of the bed. It ultimately was shown to be a pistol, since after the sexual act took place, he reclined on the bed holding the weapon on his chest. This exhibition of the weapon goes beyond the evidence presented in *Blount.* As stated in that case, the aggravating threat need not be verbal or express. The emergence of the weapon here was implicitly in response to the victim's reluctance to proceed with the sexual act and not simply related to efforts to dissuade her from reporting the crime. The rule of *Blount* is satisfied in this case. Grounds of Error Nos. One, Two and Three are overruled.

■ Ground of Error No. Four complains of the introduction of a police photograph of the Appellant, which was identified by one of his companions as an accurate representation of his appearance on the night of the alleged rape, August 19–20, 1983. Identity was not an issue in controversy at the trial. Appellant contends without supporting authority that the offer was made solely to prejudice him by demonstrating the discrepancy between his appearance at that time and his courtroom appearance. If Appellant is suggesting

that this amounts to a gruesome photograph with its prejudicial effect outweighing its probative value, we are inclined to agree only as to the gruesome aspect. Whether identity is in question or not, the jury is entitled to as accurate a picture of the scene of the alleged crime as is possible, to include the appearance of the parties. The visual image of the actor can certainly be an operative element of the threatening context to which the complainant was forced to respond. In measuring the reasonableness and credibility of her response, the jury should be made aware of stimuli acting upon her, to include the appearance depicted in State's Exhibit No. Eleven. Ground of Error No. Four is overruled.

■ In Ground of Error No. Five, Appellant contends that he was denied effective assistance of counsel by the trial court's refusal to permit pretrial deposition of the complaining witness. The record fails to demonstrate such a denial. On February 29, 1984, a pretrial discovery hearing was conducted. At the close of that hearing, Appellant asked leave for counsel to interview the complainant, threatening to move to depose if she refused. The prosecutor advised the complainant that it was her decision whether to be interviewed or not. He offered to permit the Appellant to review the prosecution file, to include the complainant's statement and voiced objection to any proposed deposition. The court responded:

> Well, I will take up his motion, if he files a motion, I will take up his motion on the record, whether you oppose it or don't oppose it. I will take it up, and we will determine the credibility of it at that time. I am not going to make any prejudgment as far as taking depositions on the case is concerned.

Thereafter, defense counsel withdrew to chambers with the complainant. No result was presented to the court and the pretrial hearing ended. On or about March 6, 1984, Appellant did file a written motion to depose, reciting that the complainant did ultimately refuse to talk to defense counsel.

The motion was never set for hearing, never raised in the remainder of the record and was never ruled upon. Appellate complaint may not be made of a trial court ruling which the judge was never called upon to make. Ground of Error No. Five is overruled.

■ In Ground of Error No. Six, Appellant alleges that the trial court erred in excluding evidence of the complainant's prior sexual promiscuity under Tex.Penal Code Ann. sec. 22.065(a) (Vernon Supp. 1985). In his testimony, Appellant admitted engaging in sexual intercourse with the complainant but testified that it was with her consent. A bill of exception presented the excluded testimony of two defense witnesses. The second of these, Albert Tubason, testified that three years prior to the alleged rape, he and the complainant exchanged t-shirts in the parking lot behind an Odessa bar. She wore no bra at the time. The incident took place between 8:30 and 9:00 p.m. According to Tubason, another man and woman were present in the parking lot. There was no evidence of physical contact, lewd gesturing or speech, or the reason the shirts were exchanged. Nor was there any indication of the lighting conditions or proximity of the other two persons. This evidence does not amount to promiscuous behavior and was properly excluded.

■ The first witness was Betty Marie Rupe. She testified that she had known the complainant for five of six years at the time of trial. She and the complainant engaged in "sex parties" during 1980 to 1982. She could remember two specifically, but did not recite the dates. Rupe, Rupe's niece and the complainant rented a trailer at Lake Amistad and entertained four men over a weekend. The participants switched sexual partners and engaged in group sex. Photographs were taken and kept by the complainant in an album. From 1982 to April, 1983, Rupe no longer participated, but testified that during that period the complainant admitted to her further participation in such parties. In April, 1983, Rupe and her husband were

preparing to leave Odessa. The complainant visited them. According to Rupe:

> [s]he pulled off her blouse and got down on the floor with my husband. I got mad and left.

Under Section 22.065, evidence of a rape complainant's sexual conduct by specific incident, opinion or reputation, *may* be admitted only if and to the extent that it is material to a fact issue in the case and its probative value outweighs its prejudicial effect. Appellant contends that by placing consent in issue, the promiscuity evidence offered through Betty Rupe was admissible. Apart from the procedural aspects of Section 22.065, the substantive elements set out a series of prerequisite issues for admissibility. Consent must be in issue. *Boutwell v. State* (Tex.Crim.App. 711–83, 712–83, 713–83, April 24, 1985). That was satisfied here. While a consent issue is the most common and effective manner in which a defendant may justify introduction of the victim's sexual conduct, that by itself is inadequate to support indiscriminate inquiry into her sexual behavior. Teague and Helft, 5 Texas Criminal Practice Guide, sec. 125.16[1][a] and [b] (1985). The proffered evidence must 1) be material to a fact issue in the case *and* 2) have a probative value outweighing inflammatory or prejudicial impact. Prior caselaw refers to a "promiscuity" standard. The present statute simply refers to sexual conduct relevant to a material fact issue. The key questions are the similarity of the extraneous conduct and the factual issues at trial, as well as their proximity in time. Thus, clearly promiscuous behavior of a particular type may have no relevance to material issues concerning alleged sexual conduct of an entirely different sort. As an example, a confirmed homosexual victim may have a history of extremely promiscuous homosexual behavior which would have no defensive relevance or probative value in an alleged case of heterosexual rape. By contrast, very limited non-promiscuous sexual conduct may be admissible because of its probative value to a contested issue. An example of that would be an assertion of prior virginity coupled with the physical condition of the genitals as proof of penetration, countered by an isolated prior act of intercourse. *Graham v. State*, 125 Tex. Cr.R. 210, 67 S.W.2d 296 (1934). Thus, a simple showing of general prior sexual conduct even amounting to promiscuity, with a defensive assertion of consent, does not end the question of admissibility. In the most recent cases of *Young v. State*, 547 S.W.2d 23 (Tex.Crim.App.1977) and *Wilson v. State*, 548 S.W.2d 51 (Tex.Crim.App. 1977), the Court of Criminal Appeals found no error in the exclusion of evidence that the complaining witnesses had engaged in sexual intercourse the night before the alleged offense, had abortions two to three years prior, had contracted venereal disease, had multiple sexual partners and used contraceptives. Consent was at issue in both cases, but the Court of Criminal Appeals held that the offered evidence in each case was not germane to any material issue raised in the case. Appellant cites to *Mitchell v. State*, 544 S.W.2d 927 (Tex. Crim.App.1977) for the proposition that an issue of consent permits proof of the victim's reputation as a common prostitute. The facts in *Mitchell* do not support that simple assertion made by the Appellant. In *Mitchell*, the prostitution reputation was admissible because the defensive testimony asserted consensual sex, extortion of money by the purported victim and rape outcry following nonpayment.

*Young* cites the early case of *Campbell v. State*, 147 Tex.Cr.R. 192, 179 S.W.2d 547 (1944) which, like *Mitchell*, involved a prostitution proffer clearly relevant to a consensual prostitution defense. *Graham, supra*, and *Satterwhite v. State*, 113 Tex. Cr.R. 659, 23 S.W.2d 356 (1929) provide further explanation of the development of appellate reasoning on this issue. Initially, it would appear that prior sexual conduct was admissible only if consent was at issue and only if it involved intercourse between the same victim and same defendant. Exceptions were next extended to sexual conduct with other partners but only if relevant to a material issue in the case, hence, the specific evidentiary relations given as

examples in *Satterwhite*. General exposure of the victim's sexual activity was not and has not been sanctioned due to lack of actual probative value and improper inflammatory and prejudicial impact. To hold otherwise would result in mere lip service to the rule that even a prostitute has a right to say no and a right of recourse to the law when her non-consent is overridden.

■ Turning to the facts of this case, as previously noted, consent was at issue. Furthermore, Betty Rupe's testimony, by any standards, demonstrated sexual conduct arising to a promiscuous level. The time relationship was close, extending over a period of years up to four months before the alleged rape. There the satisfaction of the admissibility prerequisites ends. The only point of similarity between the extraneous sexual conduct and the event underlying the rape charge was the act of sexual intercourse. If that were enough, we would then be sanctioning a rule of global admissibility which is not supported by the case law and which is expressly precluded by the admissibility criteria set out in the statute. The points of comparison between the proffered evidence and the incident of August 20, 1983, are inadequate to demonstrate a degree of probative value even close to the inherent inflammatory and prejudicial impact of the victim's extraneous conduct. We conclude that the trial judge was correct in excluding the testimony of Rupe and Tubason. Ground of Error No. Six is overruled.

The judgment is affirmed.